IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THOMAS HAYDEN BARNES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action File No.: |
| ) | 1:08-CV-0077-CAP |
| RONALD M. ZACCARI, individually and ) | |
| in his official capacity as President of ) | |
| Valdosta State University; VALDOSTA ) | |
| STATE UNIVERSITY; BOARD OF ) | |
| REGENTS OF THE UNIVERSITY ) | |
| SYSTEM OF GEORGIA; LAVERNE ) | |
| GASKINS, individually and in her official ) | |
| capacity as in-house counsel at Valdosta ) | |
| State University; KURT KEPPLER, ) | |
| individually and in his official capacity as ) | |
| Vice President for Student Affairs at ) | |
| Valdosta State University; RUSS MAST, ) | |
| individually and in his official capacity as ) | |
| Dean of Students at Valdosta State ) | |
| University; LEAH McMILLAN, ) | |
| individually and in her official capacity as ) | |
| a counselor at Valdosta State University; ) | |
| VICTOR MORGAN, individually and in ) | |
| his official capacity as Director of the ) | |
| Valdosta State University Counseling ) | |
| Center, ) | |
| ) | |
| Defendants. ) | |

5

# BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT REPORT AND TESIMONY OF MATTHEW W. NORMAN, M.D., AND IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO INTRODUCE EXPERT WITNESS MATT W. NORMAN, M.D.

## I. SUBSTANTIVE FACTS

On May 7, 2007, Plaintiff Hayden Barnes was administratively withdrawn from Valdosta State University ("VSU") because he was determined to be a threat to the campus due to certain behaviors he had exhibited. Winders Deposition Exhibit 9. Defendant Leah McMillan, Plaintiff's therapist at VSU, indicated that "It is [her] professional opinion after assessing Hayden that he is not a threat, indirectly or directly to anyone on the VSU Campus . . . ." Winders Deposition Exhibit 8. Dr. Kevin Winders, M.D., Plaintiff's psychiatrist, and one of Plaintiff's expert witnesses, has indicated that in his professional opinion, "There was nothing during his interview that led [him] to think that [the Plaintiff] was dangerous to himself or others." Winders Deposition Exhibit 7. Dr. Winders testified in his deposition that, in his opinion, he believed that it was unreasonable to withdraw the Plaintiff from VSU. Winders Deposition at 71. Dr. Winders testified in his deposition that, based on Plaintiff's visit to Dr. Winders on December 29, 2008, that the Plaintiff was experiencing symptoms as a result of the issues at VSU.

Winders Deposition at 79. Dr. Winders testified in his deposition to the damages the Plaintiff may have suffered as a result of his administrative withdrawal at VSU. Winders Deposition at 75-96. Plaintiff, as a condition to his being able to return to VSU was required to submit documentation "from a non-university appointed psychiatrist indicating that [he was] not a danger to [him]self or others." Winders Deposition Exhibit 9. Defendants' Expert Dr. Matt W. Norman, M.D., shows in his expert report that "In [his] opinion, a reasonable clinician could have deemed [the Plaintiff] a present danger to others on or about April and May 2007 based on records reviewed." Docket #136. Dr. Norman states in his expert report that "In [his] opinion, [the Plaintiff] has not suffered any psychiatric consequences as a result of the actions of Valdosta State University or any of its agents occurring in April 2007 or after based on a review of records." Docket #136.

## II. PROCEDURAL FACTS

On January 9, 2008, Plaintiff sued eight (8) Defendants who he alleges participated in his administrative withdrawal from VSU. These eight Defendants were formerly represented by the Attorney General's office. The first pre-Answer Motion to Dismiss was filed by Defendants' counsel on April 1, 2008. Several supportive, responsive, and replying briefs relating to the Motions to Dismiss were

filed. The pre-Answer Motions to Dismiss procedures finally came to rest on December 12, 2008, by order of this Court.

Unfortunately, evidence revealed during the first year of this case required to new counsel to be obtained for Defendants Zaccari, Mast, Keppler, Morgan, Valdosta State University, and the Board of Regents. New counsel for these Defendants (David C. Will and Holly Hance) filed their entries of appearance on March 9, 2009, beginning their representation of six (6) new clients deep in litigation that had begun exactly fourteen (14) months before. At this date, Counsel Will and Hance faced a discovery deadline of May 3, 2009 (*see* Docket # 45 Joint Preliminary Report and Discovery Plan), a deadline less than two (2) months away.

Defense Counsel sought and achieved an extension of the May 3rd discovery deadline to August 1, 2009, with the Court emphasizing "but no more," and including his initials nearby to emphasize the finality of this deadline. *See* Docket # 76 Consent Order.

Predecessors to Counsel Will and Hance moved to compel Plaintiff's Counsel to disclose Plaintiff's mental health records. Defendants' Motion for Order to Allow Discovery of Plaintiff's Medical and Mental Health Records, filed 2/19/2009, Docket #60. The Court ruled on this motion to compel on May 7, 2009,

ending Plaintiff's five-month battle denying Defendants' ability to gain access to such records. Docket #77. Among these mental health records, were the records at Dr. Winders's office. Plaintiff continued to seek to regulate the Defendants' access and use of Plaintiff's mental health records. A full and complete documentation of the rules of the game did not render itself final until June 18, 2009, when the Court executed the Consent Protective Order. Docket #95. The newly extended discovery deadline would occur forty (44) days later (thirty-one (31) of which were non-weekend, non-holiday days). Therefore, the Movant's assertion that Defendants had "eight months to hire an expert" is deceiving. See Movant's Brief, Docket # 139-2 at 5. Mindful of the Court's emphasis on the deadline, Counsel Will and Hance worked to achieve the deadline, but chose, perhaps overly optimistically, not to move to extend the deadline.

During these thirty-one working days, Counsel Will and Hance attended and/or took fifteen (15) depositions, requiring long-distance travel, some of which lasted over seven (7) hours. Specifically, in the last week of discovery, July 27 through August 1, 2009, five (5) depositions were noticed by Plaintiff's counsel, three (3) of which were named-Defendants Mast, Keppler, and Zaccari. Plaintiff's Counsel Corn-Revere specifically asked that these five depositions be held until the last week of discovery to coordinate his own schedule. During the deposition

9

of Defendant Zaccari, Counsel Will volunteered to Plaintiff's Counsel Corn-Revere to allow him to exceed the seven (7) hour mark for the sole purpose of accommodating an open discovery process, free of conflicts, which Corn-Revere readily accepted. Counsel Will forewent penalizing Corn-Revere's reluctance to extend the same courtesy during his client's (the Plaintiff's) deposition weeks earlier.

On January 5, 2009, Plaintiff cited his intent to use expert witnesses Dr. Kevin Winders and Greg Lukianoff in Plaintiff's Rule 26 Initial Disclosure, Docket #47. Plaintiff cited his intent to use Professor Robert M. O'Neil as an expert witness in Plaintiff's Supplement to Initial Disclosures, Docket # 80 on May 12, 2009. However, Plaintiff did not fully disclose these witnesses as experts until months later. It was not until July 14, 2009, over six (6) months after citing their intent to use expert Lukianoff, and over two (2) months after citing their intent to use expert O'Neil, that Plaintiff's Counsel Erin Reid hand-delivered a copy of Lukanioff's expert report and other required items. Reid later emailed Defense Counsel copies of the expert report and other required items for O'Neil on or about July 17, 2009, after being prompted by Defense Counsel.

## III. ARGUMENT

These expert reports and other items are required to be served contemporaneously within the Initial Disclosures of such experts, and are required to be disclosed <u>contemporaneously</u> with the disclosure of an expert in Federal Rule of Civil Procedure 26(a)(2). Specifically the rules states in the disclosure of expert testimony,

> "this disclosure SHALL, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties employed to provide expert testimony in the case . . . , be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reason therefore; the data or other information considered by the witness in forming the opinions; and exhibits to be used as a summary of or support for the opinions; the qualification of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the studies and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition with it preceding four years." (emphasis added)

11

Specifically, the Northern District of Georgia Initial Disclosures Form requires as follows:

> "(4) Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)"

Furthermore, such reports were provided only one (1) week prior to the depositions of Lukianoff and O'Neil, which occurred in Philadelphia, Pennsylvania on July 22, 2009. Therefore the full and actual disclosure of these experts did not occur until July 14, 2009, and July 17, 2009, respectively (two (2) weeks before the close of discovery). Counsel Will and Hance did not object to this failure to comply at the time in an effort to accommodate a unnecessarily controversial discovery period.

Additionally, when Plaintiff cited his intent to use expert Dr. Kevin Winders, a psychiatrist, in his Initial Disclosures, Plaintiff unfortunately never served any report or other disclosures required by Rule 26(a)(2) with such

12

disclosure; nor did Plaintiff do so subsequently. Therefore, disclosure of the information that should have been provided to comply with Rule 26(a)(2) was not obtained by Defense Counsel until Counsel Will deposed Winders in Savannah, Georgia, on July 31, 2009. Secondly, Dr. Winders was not flexible with his availability for being deposed. Counsel Will emailed Plaintiff's Counsel Fedeli on June 22, 2009, to request to depose Dr. Winders. It was not until July 3, 2009, two (2) weeks after Will's request, that Counsel Fedeli responded. Fedeli responded with only three (3) dates for Winder's availability for the entire discovery period. Winders's deposition was coordinated with all counsel, and specifically with Plaintiff's counsel.

Winders's deposition (the transcript of which was not obtained from the court reporter until August 28, 2009) reveals clinical opinions on Mr. Barnes's mental health that Defendants must refute. Specifically, inter alia, Dr. Winders testifies regarding damages, including post-traumatic stress disorder, Barnes may have suffered as a result of his administrative withdrawal at Valdosta State University ("VSU"). Deposition of Dr. Kevin Winders, M.D. at 75-96. *No other expert report, nor any other disclosure by Plaintiff, <u>other than, or prior to, the Deposition of Dr. Kevin Winders</u>, shows anything regarding a clinical opinion of the Plaintiff's mental health.* But see Docket #47-3 (which contains a shell of

13

information, far from the disclosures required by the rule). Moreover, Movant's Brief states "Only after deposing Plaintiff's experts did the VSU defendants decide to offer an expert report." Docket #139-2 at 8. This suggests that Plaintiff's Counsel believe that Winders's substantive disclosure warrants a rebuttal expert witness on Defendants' behalf. Dr. Winders's was specifically asked to serve as an expert witness in this case. Dr. Winders has billed these Defendants for the professional hours he spent at his deposition, travelling to his deposition, and preparing for the deposition.

Most importantly, it is VITAL to Defendants' case that they be able to utilize the report and testimony of expert Dr. Norman. Dr. Norman's report and testimony are, inter alia, in direct debate of Dr. Winders's substantive disclosures. In support of so moving, Defendants show that Rule 26(a)(2)(C) states:

> "These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party."

As the substance of Dr. Winders expert testimony was never disclosed until he was deposed on July 31, 2009, Defendants are within the time limits of this Federal Rule; that is, within thirty (30) days of Dr. Winders's disclosure and no trial date has been yet set. The Scheduling Order, Docket #49, signed by the Court on January 7, 2009, specifically ordered that "the time limits . . . for completing discovery . . . are as set out in the *Federal Rules of Civil Procedure* and the Local Rules of this Court, except as herein modified . . . ." (emphasis added).

It is true that the local rules state that "Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert . . . ." Local Rule 26.2(C). However, this language has no hard and fast deadline. Rather, it more than implies an interpretative tone with discretionary room with which the Court may allow otherwise: "Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, *unless expressly authorized by court order upon a showing that the failure to company was justified.*" Local Rule 26.2(C) (emphasis added). Alas, at the outset, this rule contemplates this very type of alleged error or omission.

It is true that the Court stated that "Daubert motions with regard to expert testimony shall be filed not later than 30 days after the close of discovery;" however, this order says nothing which expressly limits the ability to disclose experts, nor does it expressly modify or retract the permissive rules set out in Rule 26(a)(2)(C) wherein disclosure of experts is tolerated up to ninety (90) days before trial and up to thirty (30) days after the disclosure of an opposing expert. It is furthermore not unreasonable to assume that the Court's deadline for Daubert motions only contemplated expert witnesses disclosed prior to the close of discovery, and did not include experts disclosed in accordance with Rule 26(a)(2)(C).

However, if it is was within the Court's intentions that these Defendants be unable to introduce any expert testimony beyond the close of discovery, regardless of the late-disclosed expert witnesses of the Plaintiff, these Defendants hereby respectfully seek leave of Court to allow the expert testimony of Dr. Matt Norman. Any delay of disclosure was a result of these Defendants' interpretation of the permissiveness of Rule 26(a)(2)(C). Any delay was intended solely for the purpose of compiling a report that would be complete and accurate under Rule 26(a)(2)(B). Rule 26(a)(2)(B) states that an expert report "shall contain a *complete* statement of *all* opinions to be expressed . . . ." (emphasis added). Specifically,

Dr. Norman was asked to evaluate any mental suffering damages the Plaintiff may have experienced in his expert report. This is in direct rebuttal to Dr. Winders's testimony as to his opinion on whether the Plaintiff experienced damages as a result of his administrative withdrawal from VSU. Deposition of Dr. Kevin Winders, M.D. at 75-96. These Defendants did not recklessly disregard the Local or Federal Rules in delaying their disclosure, nor did they want to, as suggested by Plaintiff. The introduction of Dr. Norman's expert opinion is not intended to delay ruling on the summary judgment. Rather, any minimal delay was intended only to fairly and adequately defend Defendants' positions in this case, and any omission was a result of the demanding discovery timetable.

Movant alleges that sanctions are warranted on account of these Defendants' action in disclosing this expert and for "what has a become a pattern of discovery abuses by the VSU defendants, which already has been the subject of an order of this Court." Docket #139-2 at 9. This is designed to place the Defendants on the defensive and is designed to give the appearance to the Court that the maximum penalty may actually be appropriate for Defendants' actions. This argument is slighting. As the timeless Biblical lesson urges, Plaintiff's Counsel should "First remove the beam out of [their] own eye, and then [they may] see clearly to remove the speck out of [their] brother's eye." See Docket #77 (an order compelling

17

Plaintiff to disclose records which Plaintiff, from the inception of his lawsuit "ha[d] put . . . directly at issue." Docket #77 at 4.) Sanctions are an unsuitable remedy for the issue at hand.

In the words of the Movant, "To excuse the failure to disclose an expert witness two elements must be satisfied: (1) there must be substantial justification for the failure, and (2) the failure must be harmless." Docket # 139-2 at 7 (citing St. Fleurose v. Worldwide Dedicated Services., Inc., 2007 U.S. Dist. LEXIS 89486, Case No. 6:06-cv-1272-Orl-18KRS4 (M.D. Fla. Dec. 5, 2007)). First, these Defendants have shown substantial justification with their explanation of their intentions and interpretations of the Local and Federal Rules; and by showing the demands of the discovery timetable with small firm representation of six (6) clients.

Second, Defendants show that there will be no harm to the parties. These Defendants agree to allow the late deposition of Dr. Norman. At any rate, it appears that Plaintiff's Counsel are in no hurry to complete the summary judgment phase of this case. The original deadline for summary judgment motions would have been August 21, 2009. Plaintiff's Counsel Corn-Revere initiated a pleading which extended the deadline for the final summary judgment submission to October 19, 2009. Docket #130,131. Moreover, the court reporters have not yet

delivered copies of the deposition transcripts for the depositions of Defendants Zaccari, Mast, or Keppler, nor for the depositions of VSU employees Kim Tanner or Richard Lee, all of which were deposed in the last week of July 2009. The only potential harm would be delaying or postponing summary judgment with the time it would required to depose Dr. Norman. With all these transcripts pending and extensions of deadlines for summary judgment being copasetic with Plaintiff's Counsel, there is no harm in allowing Dr. Norman's testimony.

In an effort to alleviate or to further reduce any potential argument as to any possible harm, these Defendants additionally hereby offer to cover the following costs related to the deposition of Dr. Norman: Two (2) round trip plane tickets from Washington, DC, to Atlanta, Georgia, the hourly professional rate for Dr. Norman's deposition and travel time, and the court reporter's fixed fees (not including costs for transcripts or the like) for reporting the deposition. (All expenses must be submitted to Counsel Will for pre-approval.) These Defendants also hereby waive any and all timeliness objections to any Daubert motions filed on the disclosure of Dr. Norman after the close of discovery up to, and including, any Daubert motions filed ninety (90) days after his disclosure. These Defendants hereby consent to the late deposition of Dr. Matt Norman, should such deposition be desired, up to sixty (60) days after a ruling on these motions, or up to thirty (30)

19

days after the last ruling on any motions for summary judgment, whichever occurs later.

Finally, the benefit of adding a competent expert as to the Plaintiff's mental health and tendencies outweighs the burden, if any, that may remain on Plaintiff in disclosing this expert witness. "A district court has broad discretion in all discovery matters." Docket #139-2 at 6 (citing <u>American Key Corp. v. Cole National Corp.</u>, 762 F.2d 1569, 1576 (11th Cir. 1985) (citation omitted)). Within its eminent discretion, the Court should allow the factfinder access to Dr. Norman's report. His report is the only non-biased clinical assessment of the Plaintiff's mental state this group of attorneys has to offer the factfinder. His testimony will assist the trier of fact in this otherwise complicated case. Allowing his testimony is consistent with Federal Rule of Civil Procedure 26.

Respectfully submitted,


This, the 2nd day of September, 2009.

_____
HOLLY HANCE
Georgia Bar No. 153092
Email: hhance@royallaw.net

20

**ROYAL WASHBURN WILL**
4799 Sugarloaf Parkway, Building J
Lawrenceville, Georgia 30044
Phone: (770) 814-8022
Fax: (770) 814-8360

## CERTIFICATE OF SERVICE

This is to certify that I have, this 2nd day of September, 2009, served a true and correct copy of the within and foregoing MOTION FOR LEAVE OF COURT TO INTRODUCE EXPERT WITNESS MATT W. NORMAN, M.D. and BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT REPORT AND TESIMONY OF MATTHEW W. NORMAN, M.D., AND IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO INTRODUCE EXPERT WITNESS MATT W. NORMAN, M.D. upon all parties and/or counsel of record by electronic notice as follows:

**Robert Corn-Revere**

**Christopher A. Fedeli**

**Erin Reid**

Davis Wright Tremaine, LLP

Suite 200

21

1919 Pennsylvania Avenue, N.W.

Washington, DC 20006

**Irma I. Espino**

**Cary Stephen Wiggins**

Cook Youngelson & Wiggins

260 Peachtree Street, NW

Suite 401

Atlanta, GA 30303

**Matthew R. LaVallee**

**Paul Robert Koster**

Daley, Koster & LaVallee, LLC

2849 Paces Ferry Road

Suite 160

Atlanta, GA 30339

**David R. Smith**

Brannen, Searcy & Smith

P.O. Box 8002

Savannah, GA 31412-8002

_/s/ Holly Hance_
HOLLY HANCE
Georgia Bar No. 153092

**ROYAL WASHBURN WILL**
4799 Sugarloaf Pkwy, Bldg J
Lawrenceville, GA 30043
Phone: 770-814-8022
Fax: 770-814-8360

CERTIFICATE OF COMPLIANCE

By her signature below, and as required by Local Rule 7.1.D, counsel for Defendants certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.B, namely, Times New Roman (14 point).

*Holly Hance*
Holly Hance
Georgia Bar No. 153092

Attorney for Defendants

ROYAL WASHBURN WILL
4799 Sugarloaf Parkway
Building J
Lawrenceville, GA 30043
770-814-8022 Telephone
770-814-8360 Facsimile