**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| THOMAS HAYDEN BARNES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | 7:12-CV-89 (HL) |
| RONALD M. ZACCARI, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE PROFFERED TESTIMONY AND EXPERT REPORT OF DR. MATTHEW NORMAN**

I. DR. NORMAN'S TESTIMONY IS RELEVANT TO THE ISSUE OF QUALIFIED IMMUNITY AND RELEVANT TO WHETHER A REASONABLE PERSON COULD HAVE BELIEVED THAT THERE WAS AN EMERGENCY IN DECIDING WHAT PROCESS WAS DUE BARNES.

Dr. Zaccari withdrew Barnes because he felt threatened and he felt that Barnes was a threat to campus. Dr. Zaccari believed that Barnes' Facebook Collage depicting Dr. Zaccari's photograph along with the words "Zaccari Memorial" was a death threat. Qualified Immunity protects a state actor from litigation and liability essentially if the state actor acted objectively reasonable under the circumstances considering the rights available to citizens under the Constitution. Dr. Norman's expert opinion brings to light, for consideration by the jury, the factors that are considered, in the forensic psychiatry world, to contribute

to a propensity for dangerous behavior. Therefore, if a forensic psychiatrist considered the data that Dr. Zaccari considered, at the time Dr. Zaccari considered the same data, and could conclude that, objectively speaking, Barnes exhibited factors of dangerousness, then a jury could conclude that Dr. Zaccari acted reasonable under the circumstances.

The Eleventh Circuit opinion delivering this case back to the District Court for a trial on the procedural due process count leaves the issue of procedural due process open: "Zaccari contends he faced an emergency which required immediate action. In Goss, the Court recognized that school officials can and do face emergency situations. (citation omitted)  In an actual or reasonably perceived emergency, predeprivation process 'cannot be insisted upon.' (citation omitted) Instead, the process due a student in an emergency would depend on a balancing of the different interests involved." Barnes v. Zaccari, 669 F.3d 12951306 (citing Goss v. Lopez, 419 U.S. 656, 582-83, 95 S.Ct. 729, 740; Mathews v. Eldridge, 424 U.S. 319, 334-34, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976).  Barnes and Zaccari each filed motions for summary judgment regarding the procedural due process count.  The District Court granted Barnes motion but denied Zaccari's motion. Zaccari appealed both rulings to the Eleventh Circuit.  The Eleventh Circuit essentially treats the appeal as if Zaccari is the movant.  However, Barnes was also

a movant. Therefore, deciding the evidence in the light most favorable to Barnes does not finalize the issue of procedural due process for trial.

The Eleventh Circuit considering the appeal by reviewing the evidence in the light most favorable to Barnes, as if he were the non-movant. Therefore, there is no ruling on Barnes' motion for summary judgment, and therefore the issue of procedure due process is still open. The Eleventh Circuit reiterates this: "We hold that a jury could conclude that an objectively reasonable person in Zaccari's position would not have found Barnes presented a threat to safety of VSU's campus sufficient to warrant an 'emergency' suspension or expulsion." Barnes v. Zaccari, 669 F.3d 1295,1306. " Zaccari contends that he faced an emergency situation which required immediate action. But a jury could conclude that Zaccari did not face an emergency. Therefore, we express no opinion on whether the process due in an emergency was clearly established." Barnes v. Zaccari, 669 F.3d 1295 n.15. The Eleventh Circuit does not rule out that a reasonable juror could conclude that Zaccari *did* face an emergency.

Furthermore, the Eleventh Circuit continues that, "However, Zaccari's qualified immunity defense does not drop out of the case. See Cottrell v. Caldwell, 85 F.3d 1480, 1487 (11th Cir.1996). At trial, the district court can use a special verdict or written interrogatories to determine any disputed facts and the reasonable inferences drawn from those facts. Id. Once these issues are decided,

Zaccari may reassert his qualified immunity defense in a motion for judgment as a matter of law. Id." Barnes v. Zaccari, 669 F.3d 1295,1308.

Assessing whether an emergency situation existed under the procedural due process claim, and whether Dr. Zaccari is entitled to a qualified immunity defense bring into relevance the objective factors for dangerousness, to which Dr. Norman will testify.

## II. DR. NORMAN'S TESTIMONY IS RELEVANT TO THE ISSUE OF WHETHER BARNES SUFFERED EMOTIONAL PAIN AND ANGUISH AS A RESULT OF DR. ZACCARI'S INTENTIONAL ACTS

Dr. Norman reviewed all of the mental health records, including therapy notes, medications, and diagnoses, which were pre-existing conditions in Barnes, at the time he was withdrawn from the University. Dr. Norman can testify to the effect of further emotional stress on an individual who is already impaired by preexisting anxiety and other mental health issues.

Barnes' mental health report, before his withdrawal from VSU, and after his withdrawal from VSU, is the same. Dr. Norman has confirmed that there appear to be no new developments in Barnes' status over the course of his psychiatric treatment. Dr. Norman has also reviewed Barnes' mental health records for documentation of post-traumatic stress disorder, and accounts for that in his report. Norman also brings out objective forensic information on the tendency of the subject patient to malinger in reporting post-traumatic stress disorder. Deposition

of Matthew W. Norman (hereafter "Tr.") at 281:20-25 – 282:1-8.  By employing Dr. Norman's contributions, the Court will make it fundamentally easier for the trier of fact to understand and consider the evidence on Barnes' mental damages before making its decision.  Of course, as discussed above, Rule 702 entitles the trier of fact to advice on the methodology and a suggestion of a logical inference based on that methodology.

### III. DR. NORMAN'S OPINION MEETS THE REQUIREMENTS OF DAUBERT AND RELATED LAW

"[Federal Rule of Evidence] 702 has been amended in response to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and to the many cases applying Daubert, including Kumho Tire Co. v. Carmichael, 119 S. Ct. (1999)." Fed. R. Evid. 702 Advisory Committee's Notes to Amendment effective December 1, 2000.  Rule 702 provides that

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Fed. R. Evid. 702 (As amended effective December 1, 2000).  Additionally, "the trial judge must have considerable leeway in deciding in a particular case how to

go about determining whether a particular expert testimony is reliable." Kumho, 119 S. Ct. 1167, 1176.

Dr. Norman will assist the trier of fact in identifying the risk factors for dangerousness in a mentally ill patient. Dr. Norman relies on authoritative publications when identifying the risk factors presented in Barnes in his expert report, and cites to them throughout his expert report. Finally, Dr. Norman has applied all relevant facts and data presented to Defendant Zaccari in April and May 2007.

> An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical or other specialized knowledge. The most common source of this knowledge is the expert witness . . . . Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case leaving the trier of fact to apply them to the facts. Since much of the criticism of expert testimony has centered upon the hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in nonopinion form when counsel believes the trier can itself the requisite inference. . . . It will continue to be permissible for the expert to take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts.

Fed. R. Evid. 702 Advisory Committee's Notes (citing Rules 703 to 705).

> [Federal Rule of Evidence 702] is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise." See, e.g., Heller v. Shaw Industries, Inc., 167 F.3d 146, 160 (3d Cir. 1999) (expert testimony cannot be excluded simply because the expert uses one test rather than another, when both test are accepted in the field and both reach reliable results.)

Fed. R. Evid. 702, Advisory Cmte. Note to Amendment effective December 1, 2000.  Moreover, "proponents do not have to demonstrate to the judge by a preponderance of evidence that the assessment of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their op[inions are reliable . . . ." and that the expert "provides a reasonable link between the information and the procedures he uses and the conclusions he reaches."  Id (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994) and Kumho, 119 S. Ct 1167.

    Here, Plaintiff argues that none of Dr. Norman's opinions are relevant. However, Plaintiff will undoubtedly continue to argue that the opinions of Dr. Winders and Defendant McMillan in May 2007 are reliable authorities for the purposes of belittling Defendant Zaccari's opinion on Barnes' dangerousness.  The trier of fact is entitled to hear a second, differing, and more reliable, opinion from Defendants' expert.  Accordingly, Dr. Norman's report lays out the relevant risk factors present during April and May 2007, and identifies how these factors, citing authority for each therefor, were indeed contributing risk factors for dangerousness.  Norman's methodology, application of this methodology to the facts of the case, and suggested inferences to be drawn, are reliable and acceptable under Daubert and progeny.

Additionally, Plaintiff suggests that Dr. Norman's failure to conduct an in-person evaluation of Barnes negates his ability to provide any expert opinion on the topic of dangerousness.  Defendants reiterate that is not the subjective propensity of Barnes for dangerousness, but rather what should have, or could have, been objectively perceived at the time by Dr. Winders, and McMillan, and at least communicated to Dr. Zaccari.  Dr. Norman addressed the issue of the value of an in-person evaluation of Barnes in his deposition, and he indeed stated that if he had had the opportunity to interview Barnes inside the time period of April to May 2007 his opinion *may* have changed, Tr. 155:11-13; Norman Aff. ¶ 25.  However, such an in-person assessment, anytime outside the period of April to May 2007, would *not* have changed his opinion.  Norman Aff. ¶ 25.  An <u>ex post facto</u> interview of Barnes would be futile.  There is also the obvious tendency that Barnes would "play good" and manipulate his responses in such an interview.  <u>See</u> Tr. 281:20-25 – 282:1-8 (regarding malingering in self-reporting of post-traumatic stress disorder).  Dr. Norman also testified that "a dangerousness assessment can be done *without* having to examine the individual," Tr. 152:7-8 (emphasis added), and that it's perfectly "ethical to offer an opinion [without an in-person exam of the subject] as long [the opinion] is qualified by the fact that [he] did not examine Mr. Barnes."  Tr. 152:23-25 – 153:1-3.  Dr. Norman was in possession the

complete mental health records produced in discovery from third party mental health clinicians in this case and reviewed them all.

As stated in the Advisory Committee Note for the Federal Rule of Evidence 702, "An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical or other specialized knowledge." Fed. R. Evid. 702 Advisory Committee's Notes. The Note goes on to contemplate that Dr. Norman should be permitted to at the very least present the pertinent risk factors that were, or should have been, relevant to Dr. Zaccari, Dr. Winders, and McMillan in April and May 2007. Id. Additionally, Dr. Norman should also be permitted to suggest an inference to the trier of fact which should be drawn regarding Barnes' propensity for dangerousness after the objective analysis of the factors presented in Barnes' behavior. Id.

Dr. Norman should also be permitted to testify as to the risk factors that a reasonable person *should have* considered upon consulting a clinician regarding the risk factors for dangerousness. In his report, Dr. Norman intended for all of the factors listed in the in the "reasonable person" section to *not* be exclusive from the "reasonable clinician" section. Norman Aff. ¶ 24. That is to say that the factors listed in the "reasonable opinion" section as numbers "1" through "11" on pages 4 through 5, are also the factors which would be considered by the "reasonable clinician." Id.

Defendants have, at a minimum, carried the burden to show that Dr. Norman "provides a reasonable link between the information and the procedures he uses and the conclusions he reaches." Fed. R. Evid. 702 Adv. Cmte. Note.

Professor Robert O'Neil's opinion of whether Dr. Zaccari should have subjectively perceived a threat from Barnes' speech activities does not require an objective scientific analysis of anything. The Court may use its broad discretion and evenly apply its reasoning for including Dr. Norman as he will provide an objective scientific basis from which the trier of fact may form its own conclusion. Without Dr. Norman's compass on the universal risk factors for dangerousness, there is no other source of objective forensic evidence for judging the psychiatric aspects of this case.

Plaintiff asserts that Dr. Norman's analysis of the risk factors that a reasonable person should or would consider in this case is impermissible because it is actually the perspective of an unreasonable person.

The trier of fact is entitled to a second opinion from the biased assessments of Dr. Winders and Defendant McMillan who were required to advocate for their patient, Barnes. If Dr. Norman is not permitted to provide objective scientific guidance on the topic of dangerousness, the trier of fact will have no expert source on the matter. If Dr. Zaccari's inclinations as to Barnes' propensities to violence are confirmed, retroactively, by a forensic expert, at least on an objective basis, Dr.

Zaccari is entitled to heightened deference, which is relevant to his defense of qualified immunity.

"[Federal Rule of Evidence 702] is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise;" and that "expert testimony cannot be excluded simply because the expert uses one test rather than another, when both test are accepted in the field and both reach reliable results."  Fed. R. Evid. 702, Advisory Cmte. Note to Amendment effective December 1, 2000.

Dr. Norman's obvious abilities to speak on the principles relevant to the psychiatric aspects of case plainly fall within the purposes of Rule 702.  While the Plaintiff may be able to convince someone on cross examine that Dr. Norman's opinion is unworthy, Plaintiff cannot exclude Dr. Norman's report and opinion under the principles of <u>Daubert</u> and progeny.  The trier of fact will be hindered if Defendants are left to their lay perspectives on the esoteric topic of forensic psychiatry.  The facts of the case place forensic psychiatry and the risk factors posed by Barnes directly in issue and they require an expert for coherent presentation and clarification.

WHEREFORE, the Court should DENY Plaintiff's Motion In Limine to exclude Dr. Matthew Norman.

This, the 26th day of September, 2012.

>/s/ David C. Will
>DAVID C. WILL, Ga. Bar No. 760150
>dwill@royallaw.net
>
>/s/ Holly Hance
>HOLLY HANCE, Ga. Bar No. 153092
>hhance@royallaw.net
>
>Attorneys for Defendant

ROYAL – WILL
4799 Sugarloaf Parkway, Bldg. J
Lawrenceville, GA  30044
(770) 814-8022 Tel.
(770) 814-8360 Fax

## CERTIFICATE OF SERVICE

This is to certify that I have, this 26th day of September, 2012, served a true and correct copy of the within and foregoing ***DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE PROFFERED TESTIMONY AND EXPERT REPORT OF DR. MATTHEW NORMAN*** upon all counsel of record by placing same in the United States Mail, postage prepaid, properly addressed to:

>**Robert Corn-Revere**
>**Lisa Beth Zycherman**
>**Erin Reid**
>Davis Wright Tremaine, LLP
>Suite 800

1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

**Cary Stephen Wiggins**
Cook Youngelson & Wiggins
260 Peachtree Street, NW
Suite 401
Atlanta, GA 30303

/s/ David C. Will
DAVID C. WILL, Ga. Bar No. 760150
dwill@royallaw.net

/s/ Holly Hance
HOLLY HANCE, Ga. Bar No. 153092
hhance@royallaw.net

Attorneys for Defendant

ROYAL – WILL
4799 Sugarloaf Parkway, Bldg. J
Lawrenceville, GA  30044
(770) 814-8022 Tel.
(770) 814-8360 Fax