IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| THOMAS HAYDEN BARNES,        )<br>                              )<br>    Plaintiff,                )<br>                              )  Civil Action No.<br>v.                            )<br>                              )  7:12-CV-89 (HL)<br>RONALD M. ZACCARI,            )<br>                              )<br>    Defendant.                )| |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO DEFENDANT'S TRIAL EXHIBITS (DOC. #322)

### PLAINTIFF'S OBJECTIONS BASED ON RELEVANCY

Defendant incorporates by reference as if fully stated herein the portions of *Defendant's Reply to Plaintiff's Opposition to Defendant's Motion in Limine (Doc. #311)* (Doc. #327) labeled "Relevant Procedural History," "District Court Order," "Eleventh Circuit Order," and "Argument and Citation to Authorities."

Plaintiff continues to somehow miss that the defense of qualified immunity brings in to issue multiple areas of evidence, which inherently do not fit within the limited scope of damages Plaintiff seeks to prove.

### PLAINTIFF'S OBJECTIONS BASED ON PRIVILEGE

The District Court has already entered an *Order* with a finding that "Barnes

1

has put his mental health issues and damages directly at issue in this matter." Doc. #77 at 4.  The District Court cited to Plaintiff's Complaint as authority for this finding.  *Id.*  Plaintiff continues to place his mental health issues and damages at issue by claiming that he will make claims for mental anguish and that Defendant's actions proximately caused an "emotional toll" on him.  A plaintiff waives the psychotherapist/patient privilege by placing his mental condition in issue. *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 555 (N.D. Ga. 2001).  *See also Kemp v. GSU*, CA No. 1:07-cv-212-BBM-RGV (N.D. Ga. Oct. 1, 2007) (Order granting Motion to Allow Discovery of Plaintiff's Medical and Mental Health Records.).  "Clearly, a plaintiff places his mental or emotional condition in issue if he intends to call his therapist as a witness or to make any other offensive use of the privilege." *Kemp* at *3 (citing *Bethel v. Dixie Homecrafters*, 192 F.R.D. 320, 323 (N.D. Ga. 2000)("stating that '[g]iven the nature of Plaintiff's claims, the fact she has squarely placed her mental condition in controversy, and because of the existence of treating health care professionals who may testify on Plaintiff's behalf . . . the court finds that Defendant has affirmatively established good cause for the mental examination.")(citing *Equal Employment Opportunity Commission v. Danka Industries, Inc.*, 990 F. Supp. 1138, 1142 (E.D. Mo. 1997)(holding that because plaintiff disclosed her psychotherapist as an expert witness who would offer testimony at trial, the psychotherapist's records were discoverable and not

privileged)(other citations to the same point omitted).  Documents relating to a Plaintiff's past mental history are discoverable so long as a plaintiff seeks damages for "physical, mental, or emotional harm or distress."  *Frey v. Gainey Transp. Serv., Inc.*, 2006 U.S. Dist. LEXIS, 24349, at *6-7 (N.D. Ga., Apr. 27, 2006).

Plaintiff seeks to introduce the testimony of his therapists to show that he was not perceived as a danger.  Defendant is entitled to a thorough defense and cross-examination when Plaintiff puts these very topics at issue.

## PLAINTIFF'S OBJECTIONS TO DEFENDANT'S REFERENCES TO THE TRAGIC VIRGINIA TECH MASSACRE OF 2007

Defendant should not be precluded from presenting testimony about what Defendant's thoughts and intentions were at the time he made the decision to withdraw Mr. Barnes from VSU.  Mr. Barnes launched his campaign against the parking deck, and communicated directly with Dr. Zaccari right in the midst of the nation's fears in light of the tragedy that occurred at Virginia Tech.  All of the reactions across the State of Georgia and the nation to improve the university system's communication and emergency responsiveness was due to the incident at Virginia Tech.  The new systems in place would have addressed Dr. Zaccari's very concerns regarding Mr. Barnes.  Furthermore, by asking for punitive damages, Plaintiff has placed Defendant's thoughts, motives, and intentions at issue and

Defendant should not be prevented from presenting his full and complete defense to these allegations.

## PLAINTIFF'S OBJECTIONS TO HIS EDUCATIONAL RECORDS

Plaintiff claims that Defendant proximately caused Plaintiff claims damages to his education and his career.  "I felt I was denied due process.  I was forced to take a leave of absence from my education, which not only impairs -- you know, any break in education is -- can be negative for graduate school or future employers.  So not only was there a break in my education, but it harmed my potential job or graduate school prospects down the line." *Deposition of Thomas Hayden Barnes* at 206:25-207:6.  Plaintiff has placed damages to his education, graduate school prospects, and future career possibilities at issue in this trial. Defendant is entitled to a full and complete knowledge of Plaintiff's educational records to provide a full defense and cross-examination of the Plaintiff, using his actual records to do so.

Once a trial date is set in a case, the parties are permitted to issue trial subpoenas duces tecum 'for the purpose of memory refreshment or trial preparation or to ensure the availability at trial of original documents previously disclosed by discovery."  *Puritan Inv. Corp. v. ASLL Corp.*, No. Civ.A 97-1580, 1997 WL 793569, at *1 (E.D. Pa. Dec. 9, 1997) (cited in *Pushko v. Klebener*, 3:05-cv-211-J-

25HTS at *9 (M.D. Fla. Sept. 7, 2007).

Plaintiff previously disclosed his attendance at Kennesaw State University, and previously disclosed his claims for damages to his education/career.  However Plaintiff never produced documents supporting those damages in his Initial Disclosures nor in discovery.  Plaintiff is privy to all of these documents as Plaintiff is the owner and/or author of these documents.  Therefore, any claim by Plaintiff that these documents are in admissible under the theory that they were not timely disclosed by Defendants in discovery is not fitting.  Plaintiff should be the entity charged with supplementing the documents requested in the Initial Disclosures and in discovery.  *See Dees v. Hyundai Motor Manufacturing Alabama, LLC*, Civil Action No. 2:07-CV-306-MHT (ordering plaintiff to serve on defendant compliance with Fed. R. Civ. P. 26(e)(1)).  Nor can Plaintiff argue that failure to disclose Plaintiff's own documents to him has resulted in any prejudice to Plaintiff.  Plaintiff was privy to all of the information contained in his own applications.  Moreover, many of the documents sought to be introduced by Defendant relate to Plaintiff's educational history that were not even in existence until recently.  For example, Plaintiff did not enroll in law school until 2011.  Any alleged late disclosure on the part of Defendants is completely harmless to Plaintiff.

PLAINTIFF'S OBJECTIONS TO SPECIFIC EXHIBITS

#4-BARNES FACEBOOK POSTINGS:  Barnes' Facebook posting including "I'm mentally ill but I'm no mass killer" and "Shoot it.  Upload it.  Get Famous" are pieces of evidence which were viewed by Dr. Zaccari prior to Dr. Zaccari's withdrawing Barnes from VSU.  These postings were part of what caused Dr. Zaccari to fear the future behavior of Barnes.  Dr. Zaccari will testify about these postings and that they influenced his decision in May 2007.  They are part of the crux of this case.  Barnes' argument that they are overly prejudicial in any way only goes to support that, like Zaccari, a potential jury member could have a negative view of these postings.

#9-BARNES EMAIL TO JASON SININGER:  Plaintiff rendered some type of medical aid, or medical advice, to a student in his resident hall in February 2007. Plaintiff was warned by the resident hall advisor, Jason Sininger, via a letter regarding the policy of not rendering medical aid to a student, unless the person rendering the aid is a trained member of the medical staff of the University. Plaintiff responded to this letter with a confrontational statement that he would be contacting his lawyer should he ever get something like this in the future.  The tone in Plaintiff's email shows that, during the close proximity of the time that Plaintiff was dealing directly with Dr. Zaccari, Plaintiff's behavior was overly

6

confrontational given the circumstances. This is relevant to show that Barnes is quick to anger towards any type of authority, even simple rules of conduct for a student dorm hall, become a battle that he must win.

#10-BARNES' REQUEST TO CONSTRUCT A WEAPON TO MAINTAIN IN HIS DORM: Plaintiff's request to construct a weapon on campus and maintain it in his dorm room is one of the factors that the jury should consider in evaluating the overall picture of Barnes' behavior during his tenure at VSU.

#11-BARNES TERMINATION FROM HIS POSITION AT SOUTH GEORGIA MEDICAL CENTER FEBRUARY 1, 2007: Dr. Zaccari learned that Mr. Barnes was terminated from his position as an ambulance driver at South Georgia Medical Center from someone with whom he spoke, prior to Barnes' withdrawal. Dr. Zaccari confirmed this information by contacting the Medical Center, prior to his withdrawal. The documentation of Barnes' termination confirms the information that Dr. Zaccari obtained prior to Barnes' withdrawal. Dr. Zaccari will testify about having received this information and how it influenced his decision in May 2007. This information is a part of the crux of this case. Barnes' argument that this information is overly prejudicial in any way only goes to support that, like Zaccari, a potential jury member could negatively view this information.

#14-BARNES' VSU ACCESS OFFICE FILE:  Dr. Zaccari learned that Mr. Barnes had been diagnosed with mental health disorders that required that Barnes be hospitalized.  He learned that Barnes had an anxiety or panic disorder.  He learned these things from speaking to Dr. Kimberly Tanner, the director of the VSU Access Office, prior to Barnes' withdrawal.  Dr. Zaccari will testify about having received this information and how it influenced his decision in May 2007.  Dr. Tanner will testify to having given this information to Dr. Zaccari.  This information is a part of the crux of this case and the contents of the file confirm the testimony and refresh the recollection of the witnesses.   Barnes' argument that this information is overly prejudicial in any way only goes to support that, like Zaccari, a potential jury member could negatively view this information.

#15-LEAH MCMILLAN'S THERAPY NOTES ON BARNES:  Dr. Zaccari learned that Mr. Barnes had been diagnosed with mental health disorders for which he was being treated.  He learned these things from speaking to Leah McMillan, Barnes' therapist at the VSU Counseling Center.  Dr. Zaccari will testify about having received this information and how it influenced his decision in May 2007. McMillan will testify to having given this information to Dr. Zaccari.  This information is a part of the crux of this case and the contents of the file confirm the testimony and refresh the recollection of the witnesses.  Barnes' argument that this

information is overly prejudicial in any way only goes to support that, like Zaccari, a potential jury member could negatively view this information.    Additionally, Plaintiff is relying on the testimony and exhibits authenticated through Leah McMillan and Dr. Kevin Winders, both identified as witnesses at trial. Dr. Winders is Plaintiff's longer-term psychiatrist, and Leah McMillan was Plaintiff's therapist during Plaintiff's tenure at VSU. Both will testify to Plaintiff's lack of a propensity for dangerousness at the time of Plaintiff's administrative withdrawal. The Rules of Evidence clearly state that the Defendant will have the opportunity to cross examine the Plaintiff's witness. FRE 611. The Rule states that cross-examination should not go beyond the subject matter of the direct examination. Defendant seeks to have expert witness, Dr. Matthew Norman, a forensic psychiatrist, testify as to the factors that contribute to a propensity for dangerousness. Dr. Norman has reviewed the psychotherapy notes of McMillan and Winders and came up with a differing opinion related to factors toward dangerousness existing in Plaintiff at the time Plaintiff was administratively withdrawn. Defendant is entitled to a thorough cross-examination of the psychotherapy notes existing prior to Barnes' administrative withdrawal to complete and support his opinion. Dr. Norman's testimony includes expert opinion related to the potential for psychotherapy patients to malinger. Dr. Norman has relied on the therapy notes and diagnoses existing before and after Barnes' withdrawal from the University to complete and

9

support his analysis.

#25-BOARD OF REGENTS RISK MANAGEMENT TASK FORCE AGENDA - MAY 23, 2007:  This evidence is relevant to the issue of qualified immunity and procedural due process.  It is relevant to what was going on during this time on college campuses across the state and across the country as a result of the tragedy at Virginia Tech, and as a result of it being known that the shooter had been diagnosed with a mental illness and had shown signs of concerning behavior.  It is relevant to the state of mind of Dr. Zaccari at the time he made the decision to withdraw Barnes from VSU.  It is relevant that there was a much bigger picture going on through the Board of Regents to try to address issues similar to Barnes.  It is also relevant to disproving the Plaintiff's ability to recover any punitive damages.

#42-FERPA RELEASE TO FIRE-10/25/07:  This evidence is relevant to the issue Barnes' alleged mental suffering and damages.  This is relevant to show that Barnes had garnered the support of a national organization during the time of his appeal and had become the national celebrity of the Foundation for Individual Rights in Education (FIRE) by the time the matter was being handled by the Office of State Administrative Hearings (OSAH).

#43-LETTER FROM FIRE TO CHANCELLOR DAVIS/BOARD OF REGENTS: This evidence is relevant to the issue Barnes' alleged mental suffering and damages. This is relevant to show that Barnes had garnered the support of a national organization during the time of his appeal and had become the national celebrity of the Foundation for Individual Rights in Education (FIRE) by the time the matter was being handled by the Office of State Administrative Hearings (OSAH).

#44-CHECK #51044-$300.00-FROM VSU TO BARNES: This evidence is relevant to the issue Barnes economic damages, as it is a refund check from VSU to Barnes.

#45-LETTER TO BARNES FROM JAMES L. BLACK - JUNE 21, 2007: This evidence is relevant to the issue Barnes' mental anguish and economic damages, as it is evidence of a refund check from VSU to Barnes, and evidence of an apology issued to Barnes from the University.

#46-54- BARNES' DEALINGS WITH RICHARD LEE AND THE FREEDOM OF EXPRESSION AREA: This is all evidence which will be introduced through Richard Lee. This evidence will refresh Richard Lee's recollection of Barnes'

11

confrontational behavior during the time that travelling evangelist minister Donnie Morris had properly reserved the freedom of expression area on the VSU campus to exercise his rights to free speech.  It will evidence that Barnes takes a confrontation stance on anyone who does not think like Mr. Barnes.  His denial of free speech to others reflects on whether his own claims of free speech are genuine.

#55-LETTER TO WALTER PEACOCK, DIRECTOR OF UNDERGRADUATE ADMISSIONS, VSU - 6/21/05 (PROBATIONARY ADMISSION):  This evidence is relevant to the issue Barnes' allegation that he suffered damages to his education, graduate school prospects, and future career, due to Dr. Zaccari's decisions.  This is relevant because when Barnes began his education at VSU, he was already on academic probation.

#56-VSU TRANSFER COURSE HISTORY -TRANSFER GPA 1.86:  This evidence is relevant to the issue Barnes' allegation that he suffered damages to his education, graduate school prospects, and future career, due to Dr. Zaccari's decisions.  This is relevant because when Barnes began his education at VSU, he was already on academic probation.

#57-WARREN WILSON COLLEGE (WWC) TRANSCRIPT - JUNE 6, 2006 - GPA 1.8625/ACADEMIC SUSPENSION:  This evidence is relevant to the issue Barnes' allegation that he suffered damages to his education, graduate school prospects, and future career, due to Dr. Zaccari's decisions.  This is relevant because when Barnes began his education at VSU, he was already on academic probation.

#60-http://thaydenbarnes.com/-printed excerpts:  This evidence is relevant to the issue of Barnes' alleged mental suffering and damages.  This is relevant to show that Barnes had garnered the support of a national organization during the time of his appeal and had become the national celebrity of the Foundation for Individual Rights in Education (FIRE).  This posting can be authenticated by the Plaintiff.

#61-62-BARNES' ONLINE RESUMES:  This evidence is relevant to the issue Barnes' allegation that he suffered damages to his education, graduate school prospects, and future career, due to what Dr. Zaccari's decisions.  These are postings online which include Barnes' self-advertised success stories in this category.  This posting can be authenticated by the Plaintiff.

#63-BARNES' COMPLAINT AGAINST BOARD OF REGENTS - SUPERIOR COURT FULTON COUNTY, GEORGIA-CERTIFIED COPY: This evidence is relevant to the issue Barnes' damages. He is seeking the same damages in another matter against the Board of Regents, related to the same facts.

#64-65 ACADEMIC RECORDS ON PLAINTIFF AFTER HIS WITHDRAWAL FROM VSU: Defendant incorporates by reference herein the portions contained in this brief above in the section entitled "Plaintiff's Objections to His Educational Records." Plaintiff's objections to the procedural aspects of the subpoena are moot.

#66-DR. WINDERS - THERAPY NOTES, MENTAL HEALTH RECORDS: Dr. Zaccari learned that Mr. Barnes had been diagnosed with mental health disorders for which he was being treated. He learned these things from speaking to Leah McMillan, Barnes' therapist at the VSU Counseling Center. McMillan had been in communication with Barnes' long-term psychiatrist, Dr. Kevin Winders, during her sessions with Barnes in 2007. Dr. Zaccari will testify about having received this information and how it influenced his decision in May 2007. McMillan will testify to having given this information to Dr. Zaccari. Dr. Winders has been identified as a witness for Barnes. Additionally, Plaintiff is relying on the testimony and exhibits authenticated through Leah McMillan and Dr. Kevin Winders, both

identified as witnesses at trial. Dr. Winders is Plaintiff's longer-term psychiatrist, and Leah McMillan was Plaintiff's therapist during Plaintiff's tenure at VSU. Both will testify to Plaintiff's lack of a propensity for dangerousness at the time of Plaintiff's administrative withdrawal. The Rules of Evidence clearly state that the Defendant will have the opportunity to cross examine the Plaintiff's witness. FRE 611. The Rule states that cross-examination should not go beyond the subject matter of the direct examination. Defendant seeks to have expert witness, Dr. Matthew Norman, a forensic psychiatrist, testify as to the factors that contribute to a propensity for dangerousness. Dr. Norman has reviewed the psychotherapy notes of McMillan and Winders and came up with a differing opinion related to factors toward dangerousness existing in Plaintiff at the time Plaintiff was administratively withdrawn. Defendant is entitled to a thorough cross-examination of the psychotherapy notes existing prior to Barnes administrative withdrawal to complete and support his opinion. Dr. Norman's testimony includes expert opinion related to the potential for psychotherapy patients to malinger. Dr. Norman has relied on the therapy notes and diagnoses existing before and after Barnes' withdrawal from the University to complete and support his analysis.

#67-66 - MENTAL HEALTH RECORDS - CRAWFORD, FLEET, KSU: Defendant incorporates by reference herein the portions contained in this brief

above in the section entitled "Plaintiff's Objections Based on Privilege."

#70 - LETTER FROM BARNES' MOTHER TO DR. WINDERS RE BARNES "LIKE A CAGED ANIMAL":  Defendant incorporates by reference herein the portions contained in this brief above in the section entitled "Plaintiff's Objections Based on Privilege."  Plaintiff seeks to have his mother, Kelly Burke, testify on his behalf at trial.  Ms. Burke will undoubtedly testify to her son's good character for peaceful activism.  Defendant is entitled to a full and thorough defense and cross-examination of Mrs. Burke's testimony.

#71 - EXPERT REPORT OF DR. NORMAN:  Defendant incorporates by reference herein all of Defendant's arguments contained in Docket #316, and all references contained therein.

#72 - FOX NEWS VIDEO: The Fox News Video of Plaintiff on the VSU campus after his withdrawal is relevant to Plaintiff's claims of damages in the area of mental anguish and the "emotional toll" the withdrawal had on him.  Plaintiff testified in his deposition that he was "scared to go back to Valdosta State University" because he "fear[ed] for his personal safety when [he was] there . . . [b]ecause of the traumatic experiences that occurred there."  *Deposition of Thomas*

*Hayden Barnes* at 139:15-140:1.  Defendant is entitled to a full and thorough defense and cross-examination of Plaintiff's testimony related to his damages.  This Fox News Video shows a confident, expressive Hayden Barnes in the center of campus pointing out buildings in the proximity of the administrative buildings.  It later shows Barnes describing his experiences with the Defendant in front of the parking deck during the time it was still under construction.

#73 - MAP OF VSU CAMPUS:  The map of the VSU campus shows the locations Plaintiff stood and walked in during the Fox News Video.

#74 - VSU THREAT RESPONSE TEAM (TRT) PROCEDURES MANUAL:
The Threat Response Team (TRT) is completely relevant to the issues of qualified immunity, due process, and punitive damages.  The TRT came in to existence because of instances of violence on campus, wherein there is evidence of tendencies toward mental instability in a student or an employee of VSU.  The TRT is VSU's name for the newly formed emergency response systems on campuses across the state (and the country) which have developed to handle situations wherein someone feels threatened by a student or employee.  The TRT would have addressed the issues that were presented in Mr. Barnes and would have been a trained, able-bodied entity designed to handle all of Dr. Zaccari's concerns

related to Mr. Barnes. Dr. Tom Hardy is the current chairman of the TRT at VSU, and for this reason, he is the most knowledgeable witness as to how the TRT may respond to such situations.

This, the 17th day of October, 2012.

/s/ David C. Will
DAVID C. WILL, Ga. Bar No. 760150
dwill@royallaw.net

/s/ Holly Hance
HOLLY HANCE, Ga. Bar No. 153092
hhance@royallaw.net
Attorneys for Defendant

ROYAL – WILL
4799 Sugarloaf Parkway, Bldg. J
Lawrenceville, GA  30044
(770) 814-8022 Tel.
(770) 814-8360 Fax

# CERTIFICATE OF SERVICE

This is to certify that I have, this 17th day of October, 2012, served a true and correct copy of the within and foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO DEFENDANT'S TRIAL EXHIBITS (DOC. #322)** upon all counsel of record by e-filing the same with the court's electronic filing system, which will automatically send an electronic copy of the same to:

**Robert Corn-Revere**
**Lisa Beth Zycherman**
**Erin Reid**
Davis Wright Tremaine, LLP
Suite 800
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

**Cary Stephen Wiggins**
Cook Youngelson & Wiggins
260 Peachtree Street, NW
Suite 401
Atlanta, GA 30303

/s/ David C. Will
DAVID C. WILL, Ga. Bar No. 760150
dwill@royallaw.net

/s/ Holly Hance
HOLLY HANCE, Ga. Bar No. 153092
hhance@royallaw.net
Attorneys for Defendant

ROYAL – WILL
4799 Sugarloaf Parkway, Bldg. J
Lawrenceville, GA  30044
(770) 814-8022 Tel./(770) 814-8360 Fax