IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| THOMAS HAYDEN BARNES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | 7:12-CV-89 (HL) |
| RONALD M. ZACCARI, ) | |
| ) | |
| Defendant. ) | |

## SUMMARY OF THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS, MATTHEW W. NORMAN, M.D.

COMES NOW DEFENDANT RONALD M. ZACCARI, and, as directed by the Court, Defendant hereby submits the foregoing summary of the testimony of Defendant's expert witness, Matthew W. Norman, M.D.

Dr. Norman's expert report was filed with the Court on August 18, 2009, in an attachment to Document #136. Dr. Norman is a psychiatrist with a both a forensic and clinical psychiatric practice. In short, this means that Dr. Norman, in addition to providing forensic (or objective) psychiatric evaluations of individuals, Dr. Norman also sees patients with mental health, or related, issues.

Dr. Norman was thoroughly cross-examined by Mr. Corn-Revere in his deposition of November 19, 2009.

Dr. Norman will state that it is his opinion that a reasonable person could have deemed the Plaintiff, Mr. Barnes, a clear and present danger based on the records reviewed. These records are records that were in existence prior to Dr. Zaccari's making his decision to withdraw the Plaintiff from school in 2007. The information contained in these records was either directly available to Dr. Zaccari prior to his making the decision, or they were available to individuals who advised Dr. Zaccari about the Plaintiff prior to Dr. Zaccari's making his decision to withdraw the Plaintiff from Valdosta State University.

Dr. Norman's testimony rebuts the testimony of Dr. Kevin Winders and Mrs. Leah McMillan.

Dr. Norman will state that it is his opinion that a reasonable mental health clinician could have deemed the Plaintiff a present dangerous person on or about April and May 2007 based on information and data presented at that time. This includes information and data available to the Plaintiff's long-term psychiatrist, Kevin Winders, M.D., as well and information and data available to the Plaintiff's therapist at the VSU Counseling Center, Leah McMillan. Both Dr. Winders and Mrs. McMillan provided letters to Dr. Zaccari in May 2007 stating that Mr. Barnes

was not dangerous, along with other ambiguous statements and disclosures about the Plaintiff. This also includes information and data that would have been available to an unbiased forensic psychiatrist evaluating the Plaintiff. Mrs. McMillan, in her testimony, states that she had, on her own volition, without any influence from Dr. Zaccari, or anyone else, recommended to Mr. Barnes, and to Dr. Winders, that the Plaintiff take the next semester off of school. Dr. Winders also testified that he didn't really have an opinion either way on whether the Plaintiff should return to school, but that he was just following the wishes of his patient at "face value."

Dr. Norman will testify that in a situation such as this, Dr. Zaccari was essentially requesting a fitness-for-duty, or forensic psychiatric evaluation, on the Plaintiff, an individual who had threatened him on numerous occasions, during a time period when the entire nation was mourning the losses of the Virginia Tech shooting, and was scared of a copy cat shooter at another university. Dr. Norman will testify that a forensic evaluation of the Plaintiff could have reasonably revealed that Mr. Barnes was dangerous or unfit to continue in his current state and still function as a college student at VSU, where he would be in close proximity to Dr. Zaccari.

Dr. Norman will testify that it is his opinion that the Plaintiff appears not to have suffered any psychiatric consequences as a result of the actions of Dr. Zaccari in 2007. This is based on Dr. Norman's review of the clinical records produced by the Plaintiff's treating therapists in discovery.

Dr. Norman will testify about the conflict of interest of a clinical psychiatrist, or therapist (such as Winders and McMillan), when he or she is asked to provide an assessment on dangerousness (i.e. a forensic assessment) on his or her own patient. The American Academy of Psychiatry and the Law's "Ethics Guidelines for the Practice of Forensic Psychiatry" provide the following relevant guidelines for this area of science:

> Psychiatrists who take on a forensic role for patients they are treating may adversely affect the therapeutic relationship with them. Forensic evaluations usually require interviewing corroborative sources, exposing information to public scrutiny, or subjecting evaluees and the treatment itself to potentially damaging cross-examination. The forensic evaluation and the credibility of the practitioner may also be undermined by conflicts inherent in the differing clinical and forensic roles. Treating psychiatrists should therefore generally avoid acting as an expert witness for their patients or performing evaluations of their patients for legal purposes.
>
> Treating psychiatrists appearing as "fact" witnesses should be sensitive to the unnecessary disclosure of private information or the possible misinterpretation of testimony as "expert" opinion. In situations when the dual role is required or unavoidable (such as Workers' Compensation, disability evaluations, civil commitment, or guardianship hearings), sensitivity to differences between clinical and legal obligations remains important.

http://www.aapl.org/ethics.htm (Commentary for § IV Honesty and Striving for Objectivity).

Dr. Norman will testify regarding the conflict of interest between a duty to warn regarding a psychiatric patient's potential dangerousness, and the duty to maintain the privilege

of that patient's communications.

Dr. Norman will testify regarding how this conflict of interest was very relevant in the wake of the Virginia Tech shootings, and how it is very relevant today with many shootings that have occurred at the hands of individuals who have previously sought mental health treatment.

Dr. Norman will testify that that it is his opinion that Dr. Zaccari acted in conformity with the typical, and reasonable, behavior that occurs in individuals after a shooting at the hands of a mental health patient--particularly under these circumstances.

Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (As amended effective December 1, 2000). Additionally, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether a particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 119 S. Ct. 1167, 1176 (1999).

> An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical or other specialized knowledge. The most common source of this knowledge is the expert witness . . . . Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case leaving the trier of fact to apply them to the facts. Since much of the criticism of expert testimony has centered upon the hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in nonopinion form when counsel believes the trier can itself the requisite inference. . . . It will continue to be permissible for the expert to take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts.

Fed. R. Evid. 702 Advisory Committee's Notes (citing Rules 703 to 705).

> [Federal Rule of Evidence 702] is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise." See, e.g., Heller v. Shaw Industries, Inc., 167 F.3d 146, 160 (3d Cir. 1999) (expert testimony cannot be excluded simply because the expert uses one test rather than another, when both test are accepted in the field and both reach reliable results.)

Fed. R. Evid. 702, Advisory Cmte. Note to Amendment effective December 1, 2000.  Moreover, "proponents do not have to demonstrate to the judge by a preponderance of evidence that the assessment of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their op[inions are reliable . . . ." and that the expert "provides a reasonable link between the information and the procedures he uses and the conclusions he reaches."  Id (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994) and Kumho, 119 S. Ct 1167.

As stated in the Advisory Committee Note for the Federal Rule of Evidence 702, "An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical or other specialized knowledge."   Fed. R. Evid. 702 Advisory Committee's Notes.  The Note goes on to contemplate that Dr. Norman should be permitted to at the very least present the pertinent risk factors that were, or should have been, relevant to Dr. Zaccari, Dr. Winders, and McMillan in April and May 2007.  Id.  Additionally, Dr. Norman should also be permitted to suggest an inference to the trier of fact which should be drawn regarding Barnes' propensity for dangerousness after the objective analysis of the factors presented in Barnes' behavior.  Id.

Defendants have, at a minimum, carried the burden to show that Dr. Norman "provides a reasonable link between the information and the procedures he uses and the conclusions he reaches."  Fed. R. Evid. 702 Adv. Cmte. Note.  By employing Dr. Norman's contributions, the Court will make it fundamentally easier for the trier of fact to understand and consider the evidence before making its decision.  Of course, as discussed above, Rule 702 entitles the trier of fact to advice on the methodology and a suggestion of a logical inference based on that methodology.

In sum, Dr. Norman will testify as a rebuttal witness, as rebuttal expert, as to the weight and credibility of the evidence offered by other witnesses, and will provide meaningful and relevant scientific data to the jury.


RESPECTFULLY SUBMITTED,

this, the 18th day of January, 2013.

    /s/ David C. Will  
    DAVID C. WILL, Ga. Bar No. 760150


    /s/ Holly Hance  
    HOLLY HANCE, Ga. Bar No. 153092

## CERTIFICATE OF SERVICE

This is to certify that I have, this 18th day of January, 2013, served a true and correct copy of the within and foregoing *SUMMARY OF THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS, MATTHEW W. NORMAN, M.D.* upon all counsel of record by e-filing the same in the Court's electronic filing system, which will automatically serve a copy of the same upon:

**Robert Corn-Revere**
**Lisa Beth Zycherman**
**Erin Reid**
Davis Wright Tremaine, LLP
Suite 200
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

**Cary Stephen Wiggins**
Cook Youngelson & Wiggins
260 Peachtree Street, NW
Suite 401
Atlanta, GA 30303

/s/ Holly Hance
HOLLY HANCE, Ga. Bar No. 153092