**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

THOMAS HAYDEN BARNES,　　　　*
　　　　　　　　　　　　　　　　*
Plaintiff,　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
v.　　　　　　　　　　　　　　　*　　CASE NO. 7:12-cv-00089-HL
　　　　　　　　　　　　　　　　*
RONALD M. ZACCARI, *et al.*,　　*
　　　　　　　　　　　　　　　　*
Defendants.　　　　　　　　　　*

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR ATTORNEY'S FEES AND COSTS**

Counsel for Plaintiff Thomas Hayden Barnes hereby submit this memorandum in support of the award of attorney's fees and costs to plaintiff as the prevailing party in this matter under 42 U.S.C. § 1988, Fed. R. Civ. P. 54, and Local Rule 54.1, and pursuant to this Court's entry of judgment of February 4, 2013.  (Dkt. 360).

In this action seeking relief from his summary expulsion from Valdosta State University without notice or a hearing, plaintiff prevailed on his claim that Defendant Ronald Zaccari deprived him of his procedural due process rights under the U.S. Constitution.  Accordingly, for the reasons that follow, plaintiff should be awarded fees and costs commensurate with his success in bringing this lawsuit.

## I.　　OVERVIEW

After five years of litigation, a jury found Defendant Zaccari personally liable for compensatory damages in the amount of $50,000.  This verdict provides a significant measure of compensation for Zaccari's infringement of Hayden Barnes's right to due process, but it also provides a far broader measure of success for Barnes and for all students in this closely watched

case.  As Barnes testified at trial, a principal motivation in his decision to file suit was to prevent other students from suffering the type of abuses Zaccari committed in this case.

Almost from the beginning, the Defendant's egregious actions attracted the attention of national organizations as well as the press.  *See* Declaration of Greg Lukianoff ("Lukianoff Decl.") ¶¶ 4-6 (attached hereto as Exhibit A).  Perhaps more importantly, the case "has been and continues to be closely watched by college administrators, higher education law experts, university counsel, and the collegiate "risk management" industry. (The risk management industry includes organizations and professional consultants who advise universities on ways to avoid legal liability and damage awards)."[1]  Within days of the jury's verdict, *Barnes v. Zaccari* was characterized as one of the most important decisions for student conduct administration in the past 25 years.  *Id*. ¶ 7 & Attachment 4 (Presentation by John Wesley Lowery, *25 Years of Legislation and Litigation Impacting Student Conduct Administration*, Association for Student Conduct Administration Conference, February 8, 2013, at 15).

As a consequence, the jury's verdict in this case "will send a powerful, clear, and much-needed message to university administrators around the country about the importance of respecting student rights."  Lukianoff Decl. ¶ 8.  Professor Robert M. O'Neil, former President of the University of Virginia and of the University of Wisconsin System observed that this case became "a cause célèbre in higher education circles."  Declaration of Robert M. O'Neil ("O'Neil Decl.") ¶ 6 (attached hereto as Exhibit B).  As such, the "decision in this case to impose personal liability on a state university president is unusual, and it will have an important deterrent effect

---

[1] Lukianoff Decl. ¶ 7.  *See also* Attachment 1 (*University president may be personally liable for withdrawing "dangerous" student*, LAW AND POLICY REPORT, No. 412, Feb. 16, 2012); Attachment 2 (*Avoid rushing to judgment on students who may pose threat*, CAMPUS SECURITY REPORT, Nov. 2008, at 6-7); Attachment 3 (Allan L. Shackelford, *'Personal liability' should be wake-up call for presidents, senior administrators*, CAMPUS LEGAL ADVISOR, Dec. 2010, at 3).

on any similar disregard of basic due process rights by others within the higher education community." *Id*. ¶ 7. It "will be widely noted within the higher education community," and will serve as a "source of caution or warning that fellow administrators are very likely to heed." *Id*. ¶¶ 7-8. *See also* Lukianoff Decl. ¶ 9 ("It is difficult to overstate the significance of this ruling.").

Accordingly, Plaintiff seeks an award of attorney's fees and costs pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, the purpose of which is to ensure "effective access to the judicial process" to those with civil rights grievances. H.R. Rep. No. 94-1558, at 1 (1976). Under this provision, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." S. Rep. No. 94-1011, at 4 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5912 (citation omitted). *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). In cases such as this, "counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" *Hensley*, 461 U.S. at 430 n.4 (quoting *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444 (C.D. Cal. 1974)). The amount of such fees is governed by the same standards applicable to other types of equally complex federal litigation, and shall not be reduced "because the rights involved may be nonpecuniary in nature." *Id.*

Based on the litigation to date, Plaintiff hereby seeks an award of attorney's fees of $1,653,245.00 for Davis Wright Tremaine LLP, $78,546.00 for the Wiggins Law Group, and $5,377.50 for the Warshauer Law Group, PC. Additionally, counsel seek an award of expenses in the amount of $69,765.73 for Davis Wright Tremaine LLP, $1,588.29 for the Wiggins Law Group, $538.13 for the Warshauer Law Group, PC, and $2,918.44 that plaintiff incurred

directly.[2]  The details of these requests are set forth in this petition and are supported by specific billing information and declarations.

The Defendant no doubt will maintain that the amount of fees requested is excessive because the damage award is lower than the amount Plaintiff sought and the amount of time devoted by counsel to the litigation is excessive.  Such an argument ignores the substantial damages Zaccari must pay because of the injuries he inflicted on Barnes, and it also overlooks the significant public benefits of the verdict in this case.  The vindication of a constitutional right against a governmental defendant is "an important measure of success" that must be taken into account when calculating attorney's fees. *Atlanta Journal & Const. v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1290 (11th Cir. 2006).  Success in a civil rights claim "is measured differently than success in a private tort claim," *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001), because Congress elected "to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989).  In a case such as this, "vindicating a constitutional right against a [governmental] defendant heightens the public benefit created by a lawsuit," and a court must account for this distinct measure to avoid undermining the purpose of § 1988. *Villano*, 254 F.3d at 1307.  *See Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) ("The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys' fees under Section 1988.").

---

[2] These amounts will need to be supplemented to account for time devoted to preparation and defense of this petition for fees, as well as any post-trial motions or appeals the Defendant may file.

With respect to any argument that the amount of time devoted to this case is excessive, the fees and expenses set forth in this petition reflect a good faith effort to exclude any hours that were excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434. This exercise of billing judgment erred on the side of excluding time beyond that normally applied to bills for paying clients. That being said, counsel acknowledges that this litigation was far more protracted and at times contentious than necessary, but not because of any actions by the Plaintiff. Undersigned counsel attempted to avoid incurring such fees and costs by offering to settle with defendants on several occasions beginning in 2007.[3] Despite repeated attempts to engage in settlement discussions at each stage of the litigation, the Defendant never revisited its initial $5,000 offer of settlement for all claims, first made in November 2007. Where, as here, the defendant's litigation strategy was "stubborn and contentious" and "largely responsible for the long duration of the litigation and mounting attorney's fees," prevailing plaintiff's attorneys should be fully compensated. *Atlanta Journal*, 442 F.3d at 1290.

## II.      PROCEDURAL HISTORY

### A.      The Complaint

Undersigned counsel first became involved in this case in November 2007. After exchanges of correspondence in which Plaintiff's counsel set forth his legal position and urged quick settlement to forestall the accumulation of significant legal fees, then-counsel for the defendants made a final offer of $5,000 and rescission of the expulsion in exchange for a total release of all claims. Corn-Revere Decl. ¶¶ 30-31. The Defendant never budged from that

---

[3] Plaintiff's efforts to streamline the litigation and to reach settlement are described in detail in the Declaration of Robert Corn-Revere ("Corn-Revere Decl.") ¶¶ 30-31 (attached hereto as Exhibit C).

position despite repeated efforts by the Plaintiff to re-engage in settlement discussions at each stage of the litigation.  *Id*. ¶¶ 30-31.

After initial settlement discussions in November 2007 were unsuccessful, Plaintiff filed a Complaint for declaratory and injunctive relief and damages on January 9, 2008.  The Complaint named as defendants VSU, the Board of Regents of the University System of Georgia ("BOR"), VSU President Ronald Zaccari, University Counsel Laverne Gaskins, Vice President for Student Affairs Kurt Keppler, Dean of Students Russ Mast, Counseling Center Director Victor Morgan, and VSU Counselor Leah McMillan.  (Dkt. 1).  Pursuant to 42 U.S.C. § 1983, the Complaint alleged the Defendants violated Barnes's First and Fourteenth Amendment rights.  It also alleged the defendants subjected him to intentional discrimination in violation of Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Barnes further alleged that failure to provide the procedures and rights guaranteed by VSU and BOR policies and procedures was a breach of contract.

On April 4, 2008, Defendants served an Offer of Judgment, pursuant to Fed. R. Civ. P. 68, of $5,000.00 and the reimbursement of statutory costs and reasonable attorney's fees incurred prior to the receipt of the offer and as allowed under the law.  The Defendants also filed motions to dismiss the Complaint.

In a November 19, 2008 order issued by Judge Pannell, the Court denied Defendants' motions to dismiss Barnes's First and Fourteenth Amendment claims asserting individual liability under 42 U.S.C. § 1983, as well as his breach of contract, ADA, and Rehabilitation Act claims against the BOR and VSU.  The Court denied Defendants' qualified immunity defense to Barnes's individual liability claims.  It otherwise dismissed Barnes's First and Fourteenth Amendment official capacity claims against the individual Defendants, dismissed those claims

6

entirely against VSU and the BOR pursuant to the Eleventh Amendment, and dismissed claims against Victor Morgan.

On December 22, 2008, the parties engaged in a conference, pursuant to Fed. R. Civ. P. 26. Counsel for Plaintiff once again sought to engage in settlement discussion in light of the court's denial of the Defendants' motion to dismiss, but Defendants made no further response to Plaintiff's November 2007 counter-offer.

### B.    Discovery

The parties engaged in extensive written discovery and conducted a total of fourteen depositions between June 12, 2009 and July 31, 2009.[4]  Although Zaccari was the only remaining Defendant at the trial on damages, each of the individuals deposed by the Plaintiff provided important information on the operative facts that the jury ultimately considered. All of those deposed during the discovery phase were named as prospective witnesses by the Plaintiff, the Defendant, or both. Of those, nine of the witnesses presented testimony at trial, either live, or, as in the case of Dr. Kurt Keppler, by deposition transcript. Accordingly, the fees and expenses reasonably incurred in conducting depositions were unaffected by the fact that Zaccari was the only remaining Defendant at trial.

In the exercise of billing judgment, the Plaintiff is not seeking reimbursement for fees incurred in the drafting, or responding to, written discovery involving Defendants other than Zaccari. Plaintiff errs on the conservative side even though the written discovery produced information that was crucial to the due process claims against Defendant Zaccari. Plaintiff

---

[4] The Plaintiff deposed each of the then-Defendants, including Laverne Gaskins, Leah McMillan, Ronald Zaccari, Russ Mast, Kurt Keppler, and Victor Morgan, as well as non-parties Scott Doner, Ann Farmer, Linda Daniels, and Elizabeth Neely. The Defendant took depositions of Hayden Barnes, Kelly Burke and Dr. Kevin Winders. The Plaintiff also deposed the Defendants' late-noticed expert, Dr. Matthew Norman, after the close of discovery on November 19, 2009.

deems it sufficient to seek reimbursement for discovery-related fees and costs reasonably expended in conducting the depositions.

The Plaintiff is also seeking reimbursement for discovery-related fees and expenses caused by the Defendant's tactical decision to expand the scope of discovery.  At the onset of discovery, Defendants moved the court for an order allowing discovery of plaintiff's medical and mental health records, alleging that plaintiff "put his mental state at the time of the administrative withdrawal at issue in the case," and seeking sensitive psychotherapist records going back to Plaintiff's youth.  (Dkt. 59).  The court denied Defendants' request for all medical records, but granted the request as it applied to mental health records.  (Dkt. 77).  Defendants pursuit of a "mental illness" defense – that the expulsion was somehow justified on the theory that Mr. Barnes was "mentally ill" and therefore a "clear and present danger – significantly broadened the scope of discovery.  The Plaintiff accordingly seeks reimbursement for fees and costs reasonably expended on this added aspect of discovery.

Finally, Plaintiff is seeking reimbursement for expenses incurred as a result of the Defendants' initial unwillingness to engage in the discovery process.  When Zaccari and other Defendants represented by shared counsel were unresponsive to discovery requests, the Court issued an order compelling a response and granting monetary sanctions.  (Dkt. 87).  Defendant's counsel challenged the amount of fees incurred, but the Court thus far has not resolved that dispute.  However, the amount due can now be subsumed within the instant demand for fees from the prevailing party.

### C.      Cross-Motions for Summary Judgment

Following discovery, Barnes and all the remaining Defendants filed cross-motions for summary judgment.  All parties' briefs dealt with the common nucleus of facts and claims. Because Defendants largely presented the same or similar factual justifications and constitutional

defenses, Plaintiff was able to consolidate his opposition to Defendants' summary judgment motions as well as his reply to their separate oppositions to his summary judgment motion.  On September 3, 2010, the Court granted summary judgment for Barnes on Count 4 of the Complaint, holding that Defendant Zaccari had violated the Plaintiff's right to procedural due process.  (Dkt. 244 at 44-46).  The Court also granted summary judgment for Barnes on Count 5, holding the BOR's failure to provide due process was a breach of contract.  (Dkt. 244).  The court denied Barnes's First Amendment retaliation claim, narrowly construing the Complaint as alleging only a conspiracy.  It further held the individual Defendants other than Zaccari were not liable for denying procedural due process, and it held that Barnes suffered no substantive due process violation because a public education is not a fundamental constitutional right.  The Court also denied Barnes's ADA and Rehabilitation Act claims on the ground that Barnes was not "substantially limited" in his ability to learn.  (Dkt. 244 at 53-54).  It also dismissed VSU as a named party in the action.

### D.      Defendant's Appeal to the Eleventh Circuit

Defendant Zaccari and the BOR filed a notice of appeal for portions of the summary judgment order for which they had a right to interlocutory appeal.

### 1.      Mediation

Plaintiff engaged in court-ordered settlement negotiations in hopes the case could be resolved without protracted litigation.  Accordingly, Plaintiff prepared a confidential mediation statement and participated with defendants in mediation in Atlanta.  Both sides met with a court-designated mediator in Atlanta on January 6, 2011, where Plaintiff reasserted his counter-offer that would have resolved all remaining claims.  However, the Defendants did not revise their

$5,000 offer of settlement or otherwise show any interest in resolving the case without litigation.[5]

### 2. Briefing

Defendants filed their merits brief in the Eleventh Circuit on November 15, 2010, and oral argument was heard on November 17, 2011. On February 7, 2012, the Eleventh Circuit affirmed the district court's denial of Zaccari's motion for summary judgment based on qualified immunity "because Barnes had a clearly established constitutional right to notice and a hearing before being removed from VSU," and remanded for further proceedings. *Barnes v. Zaccari*, 669 F.3d 1295, 1309 (11th Cir. 2012). The appellate court further ordered that "[b]ecause Georgia has not waived its Eleventh Amendment immunity for breach of contract actions," the district court's order below was reversed with instructions to dismiss the claim against the BOR for want to jurisdiction. *Id.*

### E. Post-Appeal Proceedings

Upon remand to the district court, Defendant Zaccari sought a transfer of venue from the Northern District of Georgia to the Middle District. Transfer was ordered on July 18, 2012. Defendant also issued new document requests, via subpoena, to eight universities or mental health providers – three years after the close of discovery. (Dkt. 281, 282, 283, 284, 285, 286, 287, 288). Plaintiff objected to the late-filed requests. (Dkt. 327).

Pursuant to the court's order of November 21, 2012, counsel for the parties met in January 2013, to discuss settlement. Plaintiff offered to negotiate a global settlement that would include compensatory damages, out-of-pocket costs, and attorney fees. Plaintiff's attempts to settle were again rebuffed when counsel for Defendant reported that he had no additional

---

[5] Corn-Revere Decl. ¶¶ 30-31.

authority to make a settlement offer above the standing $5,000 offer.  Moreover, Defendant's counsel had no additional authority to discuss settlement at the pretrial conference held January 15, 2013.

### F.      Jury Trial on Damages

The jury was selected January 28, 2013, and on January 28 through February 1, 2013, the Court conducted a trial on damages.  The jury returned a verdict for Plaintiff – an award of $50,000 in compensatory damages for injuries arising from the deprivation of procedural due process rights when he was expelled from VSU without notice or a hearing.

### G.      Post-Trial Matters

Plaintiff anticipates that Defendant will submit a motion for judgment notwithstanding the verdict, to which plaintiff will necessarily submit an opposition.

### H.      Fee Petition

In accordance with settled law, this fee request will include a claim for the time expended in preparing this fee petition.  *See, e.g.*, *Cruz v. Hauck*, 762 F.2d 1230, 1233-34 (5th Cir. 1985) (allowing compensation for preparing and litigating fee request); *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir. 1985) (*per curiam*) (holding that measures to enforce judgment are compensable). Accordingly, it will be necessary to supplement this fee request to account for time Plaintiff's counsel must expend preparing and defending this petition.

### III.      ARGUMENT

### A.      Plaintiff's Counsel Should Be Fully Compensated For Their Work On This Case

### 1.      Legal Basis For The Award Of Fees

A civil rights plaintiff qualifies as a prevailing party when the plaintiff obtains an enforceable judgment against the party from whom fees are sought.  *Hewitt v. Helms*, 482 U.S.

755, 760 (1987).  That is, a plaintiff prevails for the purposes of § 1988 when "actual relief on the merits of his claim materially alters he legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992); *see also Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009); *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003) (*per curiam*).  The prevailing party inquiry does not turn on the magnitude of the relief obtained.  *Farrar*, at 112-13.

Here, there is no question that Plaintiff is the prevailing party where the Court has ruled that Defendant Zaccari deprived him of procedural due process, the Eleventh Circuit affirmed that the Defendant may be held personally liable for this violation, and a jury has awarded compensatory damages.  *See Farrar*, 506 U.S. at 111; *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1292 (11th Cir. 2008) ("To be a prevailing party, it is not necessary for a plaintiff ultimately to prevail on each and every claim asserted or to receive all the relief requested; he needs to prevail on some of his claims.") (quoting *Doe v. Busbee*, 684 F.2d 1375, 1379 (11th Cir. 1982)) (internal quotation marks omitted).

## 2.    Calculation of the Lodestar

"'The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1219 (11th Cir. 2008) (quoting *Hensley*, 461 U.S. at 433), *overruled on other grounds*, 559 U.S. 542 (2010).  This "lodestar" amount is presumed to be a reasonable fee. *Blum v. Stetson*, 465 U.S. 886, 897 (1984); *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) ("[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve.") (internal quotation marks omitted).

In fixing the number of hours reasonably expended, the court may exclude any hours spent on severable unsuccessful claims.  However, a plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof.  *See Goldsmith*, 51 F.3d at 1292 (district court did not abuse discretion by declining to reduce amount of attorney fee and costs where evidence in racial discrimination and retaliation suit supporting employee's successful claim was inextricably intertwined with evidence supporting his unsuccessful claims, and employee obtained substantial relief).  S*ee also Harvey v. City of Bradenton*, No. 8:04-CV-1748, 2006 WL 5017105, at *3 (M.D. Fla. June 12, 2006) (declining to substantially reduce attorney fee award where plaintiff received a jury verdict on his core retaliation claim, vindicating a constitutional right against a municipal defendant, and those portions of plaintiff's case which were unsuccessful "were intertwined with Plaintiff's main claim and were derived from the same core of operative facts").

In this case, although Plaintiff's lawsuit originally included various other Defendants, the lodestar amount should not be reduced because of other claims or parties in the case.  Plaintiff's claims were all based on the same incident – his summary expulsion from VSU on the grounds that he presented a "clear and present danger" without notice or a hearing.  The same proof would have been developed and all of the same witnesses would have been deposed even if Zaccari had been the sole defendant from the beginning.  Because the claims were interrelated and were based on related legal theories, they were unseverable and plaintiff's attorney's fee should not be reduced. Nevertheless, Plaintiff's counsel erred on the side of excluding time

devoted to discrete Defendants other than Zaccari or on claims other than the due process count on which Barnes ultimately prevailed.[6]

Additionally, in determining the number of hours reasonably expended on the litigation, counsel for plaintiff exercised significant billing judgment to eliminate the possibility of billing for duplicative or unproductive time. *See Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (*en banc*) ("'billing judgment' is an important component in fee setting . . . no less" so in § 1988 cases). For example, only time recorded by the attorneys most responsible for assisting the client is reflected in this request for fees. This means that all time was written off for attorneys who had a limited or peripheral role in the case, or whose contribution did not materially assist in the litigation.[7] No time is included for time at hearings or depositions unless that attorney actively participated or assisted therein.[8] Similarly, no time is included in the request for purely administrative matters, or for issues that involved purely client maintenance.[9]

Moreover, no time is included for: pre-complaint matters that did not factor into the litigation (an exception is communication regarding potential settlement); team meetings and communications among our team members; clerical and administrative matters; or ramping up time when junior lawyers left the firm and new members joined our team. Travel time to depositions was billed at 50 percent of the normal billable rate, unless time was actually used for

---

[6] The generous write-offs for time devoted to matters involving other Defendants overestimates what reasonably should be written off, since, for example, interrogatories to other Defendants produced material that helped established Zaccari's liability.

[7] Corn-Revere Decl. ¶¶ 16-20 (describing amount of write-offs and reasons therefor).

[8] *Id*. ¶¶ 18-19. In most cases, lead counsel appeared at hearings accompanied only by local counsel, whose presence was required under local rules.

[9] *Id*. ¶ 20. For example, time associated with counsels' motions to withdraw from this case are not included in this fee request.

preparation.[10]   As a consequence of this extensive exercise of billing judgment, the resulting fee request errs on the conservative side by deleting more time than for typical paying clients.[11]   All told, Plaintiff's counsel wrote off approximately 40 percent of the total time devoted to this case.

### 3.      Calculation of Billing Rates

#### a.      The Relevant Community

"'A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, expertise, and reputation.'" *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  As an initial matter, the "relevant community" in this case is Washington, D.C., not Valdosta, Georgia. While the Eleventh Circuit has held that the relevant community for calculation of the lodestar with respect to an attorney's services in the district court is normally the forum district, it departs from that rule where the special expertise of non-local counsel was essential to the case, and it was clearly shown that local counsel was unwilling to take the case, or other special circumstances existed.  *ACLU of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).  *See also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 96 (2d Cir. 2004).

In setting the appropriate rate, various courts have held special expertise may be required in First Amendment and due process cases in order to provide skillful representation.  For example, in *American Booksellers Ass'n, Inc. v. Hudnut*, 650 F. Supp. 324, 328 (S.D. Ind. 1986), the court awarded out-of-town rates to a New York City firm that represented plaintiffs in challenging the constitutionality of an "anti-pornography" ordinance, and in doing so found the

---

[10] *Id*. ¶¶ 19-20.

[11] *See id.* ¶¶ 19, 22.  The attachments record all time recorded at Davis Wright Tremaine LLP on this case with deleted time indicated by strike-throughs.

firm's "handling of several other significant first amendment cases in the federal courts and its filing of numerous amicus briefs before the Supreme Court" made it "unlikely that the plaintiffs could have obtained equal representation locally."   In another First Amendment case, the Southern District of Florida approved New York City rates in a Miami case because the lead counsel and his firm (Floyd Abrams of Cahill, Gordon & Reindel) were preeminent in the field of First Amendment litigation.  *Review Publ'ns, Inc. v. Navarro*, No. 89-1187-Civ, 1991 WL 252962 (S.D. Fla. June 26, 1991).  The court found that, although "there are other well qualified and experienced attorneys in the South Florida area who specialize in First Amendment litigation," none had the "breadth of knowledge, experience and national renown on a par with" Mr. Abrams.  *Id.* at *4.  Numerous other courts have reached similar conclusions in similar cases.[12]

Second, out-of-district rates apply where counsel in the jurisdiction were unwilling to take the case.  *See* Declaration of Thomas Hayden Barnes ("Barnes Decl.") ¶¶ 1-7 (attached hereto as Exhibit D).  *Brooks v. Georgia State Bd. of Elections*, 997 F.2d 857, 869 (11th Cir. 1993) (upholding higher Atlanta, Georgia rates in Brunswick, Georgia case where court accepted finding there were no local counsel available to handle complex voting rights case).

---

[12] *See, e.g.*, *Patterson v. Balsamico*, 440 F.3d 104, 124 (2d Cir. 2006) (section 1988 "requires that the district court, in addition to taking judicial notice of rates awarded in prior cases, consider any evidence the parties wish to present and determine the prevailing rate within the relevant community for attorneys of comparable skill and experience performing work on comparable cases"); *Polk v. New York State Dep't of Corrections*, 722 F.2d 23, 25 (2d Cir. 1983) (rates for out of district counsel may be used upon a showing that special expertise of counsel from difference district is required); *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) (court approved award of San Francisco rates in a case tried in Sacramento because special expertise required in complex institutional reform litigation); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169 (4th Cir. 1994) (awarding higher Richmond, Virginia rates in politically sensitive West Virginia case due to expertise needed for complex preemption and constitutional law issues).

This case satisfies both criteria – special expertise and unavailability of local counsel – and Washington, D.C. is therefore the relevant community.   The case was particularly unattractive for local counsel in Valdosta and Atlanta, Georgia for a variety of reasons, not the least of which was that it involved a challenge to the University System of Georgia. Accordingly, plaintiff's selection of lead counsel form outside the community was both necessary and appropriate.

This case also presents complex issues involving the right to procedural due process on college campuses, free expression, and the contractual rights of public university students.   In this regard, Mr. Corn-Revere is an experienced constitutional law litigator with a national reputation who has argued numerous cases in various U.S. District Courts, Circuit Courts of Appeal, and the United States Supreme Court.[13]   He has been a member of the District of Columbia Bar since 1983, and formerly served as Chief Counsel to Chairman James H. Quello of the Federal Communications Commission.   Mr. Corn-Revere has written extensively on First Amendment, Internet and communications-related issues and has provided expert testimony before numerous congressional committees and the FCC.   He is co-author of the three-volume treatise MODERN COMMUNICATIONS LAW, published by West Publishing Company, an is a member of the Editorial Advisory Board of Pike & Fischer's INTERNET LAW AND REGULATION. From 1987 to 2001, Mr. Corn-Revere taught at the Communications Law Institute of the Columbus School of Law at Catholic University of America.   He is a member and former chairman of the Media Institute's First Amendment Advisory Council, and is currently an Adjunct Scholar to the Cato Institute in Washington, D.C.   From 2000-2002, Mr. Corn-Revere served on the Board of Trustees of the Freedom to Read Foundation, an affiliate of the American

---

[13] *See* Corn-Revere Decl. ¶ 6.

Library Association.   He currently serves as an officer of the First Amendment Lawyers Association.

Plaintiff's additional counsel also have special expertise in First Amendment and constitutional law litigation.  Lisa Zycherman has worked with Mr. Corn-Revere since 2005, and has been a member of the Maryland Bar since 2004, and of the District of Columbia Bar since 2005.  She was a law clerk to the Hon. Ellen L. Hollander of the Maryland Court of Special Appeals in 2004-2005.  Erin Reid has been a member of the New York Bar since 2009 and the District of Columbia Bar since 2010.  Both Ms. Zycherman and Ms. Reid have represented clients before state and federal courts on First Amendment issues, including defending media outlets against defamation, invasion of privacy, and similar claims.

Local counsel Cary S. Wiggins has been a practicing attorney in the State of Georgia for over fifteen years, where he is also a member of the Bar of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, and the United States District Court for the Northern and Middle Districts of Georgia, and the Northern District of Florida.  Mr. Wiggins is currently a named member of the law firm of Wiggins Law Group.  Mr. Wiggins has extensive experience representing individuals and small businesses in civil rights and First Amendment rights. Mr. Wiggins has been an active member of the First Amendment Lawyers Association since 1998, where he currently serves as an officer.  Declaration of Cary S. Wiggins ("Wiggins Decl.") ¶¶ 1-6 (attached hereto as Exhibit E).

Local counsel Darl F. Champion, Jr. has been a member of the Georgia bar since 2007. He is also a member of the bar of the Georgia Supreme Court, Georgia Court of Appeals, Northern District of Georgia, and Middle District of Georgia.  Mr. Champion is currently a

partner in the law firm Warshauer Group P.C.  Declaration of Darl F. Champion, Jr. ("Champion Decl.") ¶¶ 1-5 (attached hereto as Exhibit F).

Other attorneys for whom fees are requested include Ronald London, Brigham Bowen and Chris Fedeli, as well as paralegals Marni Shapiro and Elizabeth Rivard.[14]

### b.    The Prevailing Market Rate

In calculating the "prevailing market rate" the court must conduct a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.  *Perez v. Cary Int'l, Inc.*, 373 F. App'x 907, 913 (11th Cir. 2010); *see also Turner v. Sec'y of Air Force*, 944 F.2d 804, 808-09 (11th Cir. 1991) (affirming district court judgment that took into account counsel's work product, preparation, and general ability when setting an hourly rate).  Rates awarded to civil rights counsel ordinarily should be on par with market rates for private attorneys engaged in other complex federal litigation.  S. Rep. No. 94-1011, at 6 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5908, 5913.

Numerous courts have held that the actual rate charged by private counsel to private clients is generally the best evidence of a reasonable hourly rate.[15]  *Dillard v. City of*

---

[14] *See* Corn-Revere Decl. ¶¶ 7-13.

[15] *See, e.g.*, *Adolph Coors Co. v. Truck Ins. Exch.*, 383 F. Supp. 2d 93, 97 (D.D.C. 2005) ("An attorney's usual billing rate, when in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation, is presumptively reasonable.") (internal quotation marks omitted); *National Ass'n of Concerned Veterans v. Secretary of Def.*, 675 F.2d 1319, 1324 (D.C. Cir. 1982) ("[A]ctual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate."); *Black Grievance Comm. v. Philadelphia Elec. Co.*., 802 F.2d 648, 652 (3d Cir. 1986) (market-rate value is "generally reflected in the attorney's billing rate"); *Tomazzoli v. Sheedy,* 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm."); *Islamic Ctr. of Mississippi, Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989) (attorney's customary billing rate is *prima facie* reasonable); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 660 (7th Cir. 1985) ("[H]ourly rates used to compute the lodestar are typically the rates lawyers charge clients who pay on a regular basis.") *Review Publ'ns*, 1991 WL 252962, at *5 (approving

*Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000) ("What [the attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid 'as determined by supply and demand.'") (citation omitted).  Here, the relevant hourly rates for attorneys and paralegals involved in this case are as follows: Corn-Revere ($630); London ($515); Zycherman ($420); Reid ($350); Fedeli ($435); Bowen ($300); Wiggins ($300); Espino ($135); and Champion ($225).[16]  These represent the prevailing market rates that counsel bills to paying clients.  *See*, *e.g*., Declaration of Sheri Falco ¶ 3 (attached hereto as Exhibit G).

Alternatively, rates for District of Columbia law firms may be based on the *Laffey* matrix. This is a chart of hourly rates for computing attorney's and paralegal's fees used by the United States Attorney's Office for the District of Columbia to evaluate requests for attorney's fees in fee-shifting cases for prevailing parties in District of Columbia courts.  *See Ray v. Secretary of Dep't of HHS*, No. 04-184V, 2006 WL 1006587 (Fed. Cl. Mar. 30, 2006) ("DOJ accepts the *Laffey* Matrix as the lodestar for attorneys awarded fees under fee-shifting statutes."); *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985) (district court first employed matrix).  The current *Laffey* matrix is Attachment 12 to the Corn-Revere Declaration. It sets an hourly rate of $505 for attorneys with more than 20 years of experience, $445 for attorneys with 11-19 years of experience, $355 for attorneys with 8-10 years of experience, and

---

rate "normally charged by the firm to other clients" that "fall within the prevailing range of New York law firms of comparable skill, experience and reputation").

[16] Corn-Revere Decl. ¶ 26; Wiggins Decl. ¶ 7; Champion Decl. ¶ 6.

$290 for attorneys with 4-7 years of experience.  The Court may, of course, depart upward from the *Laffey* matrix if it finds the prevailing rate should be higher. [17]

Whether counsel's market-based billing rates or *Laffey* matrix rates are used, the Court should apply current rates, not historic hourly rates.  *Grant v. Martinez*, 973 F.2d 96, 100 (2d Cir. 1992) (court may apply current rates to make up for long delay in payment).  Although this litigation began in 2007, current rates should apply for all the time expended in this action because of the delay in payment.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1993) ("We long have recognized that district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use [of] funds.").  *See also Blakey v. Continental Airlines*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998) ("[T]o take into account delay in payment, the hourly rate should be based on current rates rather than the rates in effect when the services were performed.").

### 4.     Baseline Claim for Fees

Based on the criteria listed above, the appropriate lodestar for each attorney or paralegal whose participation in the case is part of this fee request is as follows:

---

[17]   *See, e.g.*, *Adolph Coors*, 383 F. Supp. 2d at 97-98 (evidence submitted by downtown D.C. law firm showed prevailing rates in community higher than *Laffey* matrix, and court awarded firm's actual hourly rates of $425-450/hour for partner and $275-285/hour for associate); *Muldrow v. Re-Direct, Inc.*, 397 F. Supp. 2d 1, 5 (D.D.C. 2005) (court, while using *Laffey* matrix as a guide, may adjust fees upward or downward to arrive at final award "that reflects the characteristics of the particular case (and counsel) for which the award is sought") (internal quotation marks omitted).

**Breakdown of Fees by Attorney**

| Attorney | Total Hours | Market Rate | *Laffey* Matrix Rate | Market-based Lodestar | *Laffey*-based Lodestar |
|---|---|---|---|---|---|
| Corn-Revere | 1,455.05 | $630 | $505 | $915,106.50 | $734,800.25 |
| London | 16.20 | $515 | $445 | $8,343.00 | $7,209.00 |
| Zycherman | 381.95 | $420 | $355 | $160,419.00 | $135,592.25 |
| Reid | 1,084.40 | $350 | $290 | $379,540.00 | $314,476.00 |
| Fedeli | 333.40 | $435 | $445 | $145,029.00 | $148,363.00 |
| Bowen | 93.40 | $300 | $290 | $28,020.00 | $27,086.00 |
| Wiggins | 227.80 | $300 | N/A | $68,340.00 | N/A |
| Espino | 55.6 | 135 | N/A | $7,506.00 | N/A |
| Champion | 23.9 | $225 | N/A | $5,377.50 | N/A |

As described in the attached Corn-Revere Declaration, the only two attorneys who have participated in the case from the beginning to the end have been Zycherman and Corn-Revere. Other DWT associates initially worked on the case before leaving the firm for other professional opportunities (Bowen), while others began to work on the case to replace those who left (Fedeli; Reid). Other DWT attorneys provided substantive assistance on a more limited basis as needed (London). Certain substantive tasks were provided by legal assistants (Shapiro and Rivard). Cary Wiggins, and his associate Irma Espino, served as local counsel throughout the proceeding, and Darl Champion served as additional local counsel when the proceeding was transferred to the Middle District of Georgia.

Another way to examine the fee request is to break down the fees generated by the major stages of the litigation, as follows:

**Breakdown of Fees by Stage of the Litigation - DWT**

| Stage of the Case | Total Hours | Market-based Lodestar | *Laffey*-based Lodestar |
|---|---|---|---|
| Complaint | 56.90 | $26,499.00 | $22,626.50 |
| Opposition to Dismissal | 195.50 | $88,875.50 | $70,747.50 |
| Discovery | 771.15 | $355,411.00 | $303,977.75 |
| Summary Judgment | 1,022.40 | $449,471.00 | $412,509.50 |

| Stage of the Case | Total Hours | Market-based Lodestar | *Laffey*-based Lodestar |
|---|---|---|---|
| Appeal to Eleventh Circuit and Mediation | 427.35 | $215,377.00 | $182,955.00 |
| Post-Appeal Proceedings | 761.40 | $372,187.00 | $296,902.25 |
| Jury Trial on Damages | 198.60 | $95,424.50 | $77,843.00 |

Finally, the baseline fee may be broken down by examining the requests of each participating law firm:

### Breakdown of Fees by Law Firm

| Law Firm | Total Hours | Baseline fees based on market rate | Baseline fees based on *Laffey* Matrix |
|---|---|---|---|
| Davis Wright Tremaine LLP | 3,433.30 | $1,653,245.00 | $1,302,779.50 |
| Wiggins Law Group | 305.00 | $78,546.00 | N/A |
| Warshauer Law Group, PC | 23.90 | $5,377.50 | N/A |

Comparable rates have been granted in analogous First Amendment cases. In *Southeast Booksellers Ass'n v. McMaster*, CA No. 2:02-3747, slip op. (D.S.C. Sept. 8, 2005) (Dkt. 90), for example, the court awarded attorney's fees after granting a permanent injunction in response to a pre-enforcement challenge to South Carolina Internet content restrictions. In doing so, it approved a fee award for nine attorneys plus paralegals and law clerks, and it awarded the prevailing rates for attorneys from New York and Washington, D.C. The court awarded a total of $405,485.61 in attorney's fees, and approved hourly rates of $500 and $600 for the senior attorneys on the case. *Id*. at 24 & n.11. The court concluded that the attorneys' customary rates were justified because "[t]he litigated issues include complicated First Amendment questions, and because Plaintiffs' counsel are specialists in these fields and regularly litigate cases involving the questions at issue." *Id*. at 13.

**B.      The Court Should Exercise Discretion to Ensure Plaintiff's Counsel is Fully Compensated**

Counsel acknowledge that the award of fees is left to the sound discretion of the District Court.  Yet, the overarching guideline is that an attorney should receive a fully compensatory fee where, as here, he has obtained excellent results for a plaintiff.  *Hensley*, 461 U.S. at 435; *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004).  While the most direct way to ensure the award of a fully compensatory fee would be to calculate the lodestar using current market rates for the cities in which counsel normally practice, the available factors provide various ways to get to the same result.  For example, if the court applies the somewhat lower rates provided by the *Laffey* matrix, it has the option of providing an enhancement in the fee using the *Johnson* factors to make up the difference.  *See Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).  The same principle would enable the court to make up the difference between Georgia rates and those of Washington D.C.  As noted, the complete success of this litigation and other factors set forth above merit an enhancement over the usual lodestar amount.  But at minimum, this Court should exercise its discretion to ensure that counsel are compensated at their usual billing rates.

**C.      Costs are Compensable**

Reasonable expenses may be included in an award of attorney's fees under 42 U.S.C. § 1988.  *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983).  "[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988."  *Id.*  "Reasonableness" is given a liberal interpretation, and courts have awarded costs under § 1988 for such expenses as telephone, postage, photocopying, travel, food, and lodging.  *See id.* at 1191-92.  Because

significant out-of-pocket expenses have been incurred by plaintiff or on his behalf in prevailing in this lawsuit, any award of fees should include those expenses as well.

The costs and expenses sought herein consist of the types of charges typically levied by the firms on their clients, and were incurred, compiled, and recorded throughout the case by each of the firms in the same manner as they generally do for all matters. Corn-Revere Decl. ¶¶ 22-23. As with the attorney hours reasonably expended in the litigation, counsel for plaintiff have exercised billing judgment to eliminate the possibility of any questionable charges. *See* Corn-Revere Decl. ¶¶ 22-23. For example, counsel removed costs incurred more as a result of the way the firm(s) may conduct business rather than as a direct result of this litigation. Meal expenses and other charges that, while legitimately incurred during travel for the case or during other work for it, similarly have been excluded. As a consequence, as with attorney time, the resulting request for costs and expenses is a conservative one that deletes more expenses than would be typical for paying clients.[18]

The first category of costs and expenses reflects plaintiff's out-of-pocket outlay throughout the course of pursuing this litigation. These include the costs of filing and prosecuting the case, such as court filing fees and copy costs, and research expenses. They also include the costs of traveling to oral arguments and to the trial, and similar hearings at which it is customary for the party to attend.

In addition, the appropriate costs and expenses incurred by plaintiff's counsel in this case are as follows:

---

[18] *See* Corn-Revere Decl. ¶ 25.

**Breakdown of Costs and Expenses**

| Law Firm | Court and Discovery Costs* | Travel | Online Research | Total |
|---|---|---|---|---|
| Davis Wright Tremaine LLP | $42,246.93 | $20,148.26 | $7,370.54 | $69,765.73 |
| Wiggins Law Group | $652.21 | $936.08 | - | $1,588.29 |
| Warshauer Law Group, PC | - | $538.13 | - | $538.13 |
| Plaintiff T. Hayden Barnes | - | $2,918.44 | - | $2,918.44 |
| **Total** | $42,899.14 | $24,540.91 | $7,370.54 | $74,810.59 |

* Includes filing fees, transcript costs, copying and printing costs, delivery charges, court reporters, witness fees, and similar expenses and costs.

**D.      Total Request for Fees and Expenses**

Based on the foregoing, plaintiff has calculated the instant request for attorney's fees and expenses thus far in this case.  The dollar amounts presented below use a lodestar based on each attorney's market-based hourly rates.

**Breakdown of Fees by Law Firm**

| Law Firm | Attorney's fees based on market rate |
|---|---|
| Davis Wright Tremaine LLP | $1,653,245.00 |
| Wiggins Law Group | $78,546.00 |
| Warshauer Law Group, PC | $5,377.50 |

**Breakdown of Expenses by Law Firm**

| Law Firm or Participant | Expenses |
|---|---|
| Davis Wright Tremaine LLP | $69,765.73 |
| Wiggins Law Group | $1,588.29 |
| Warshauer Law Group, PC | $538.13 |

**IV.      CONCLUSION**

For the foregoing reasons, counsel for plaintiff respectfully requests that the Court award a total of $1,737,168.50 in attorney's fees and $71,892.15 in expenses to be allocated among the participating law firms, and $2,918.44 for out-of-pocket expenses incurred directly by the Plaintiff Thomas Hayden Barnes, as set forth herein.

Dated: February 19, 2013

Respectfully submitted,

＿＿＿＿＿/s/Robert Corn-Revere＿＿＿＿＿＿＿

Robert Corn-Revere
Lisa Beth Zycherman
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC  20006-3401
bobcornrevere@dwt.com
lisazycherman@dwt.com
(202) 973-4200


Cary Wiggins
Georgia Bar #757657
Wiggins Law Group
260 Peachtree Street, N.W.
Suite 401
Atlanta, GA  30303
cary@cywlaw.com
(404) 659-2880

*Counsel for Plaintiff*