**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| THOMAS HAYDEN BARNES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO. 7:12-cv-00089-HL |
| | * | |
| RONALD M. ZACCARI, *et al.*, | * | |
| | * | |
| Defendants. | * | |

**PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS'**
**MOTIONS FOR ATTORNEY FEES, COSTS, AND SANCTIONS**

Plaintiff Thomas Hayden Barnes hereby opposes Defendants Valdosta State University, Board of Regents of the University System of Georgia, Ronald M. Zaccari, Kurt Keppler, Russ Mast, and Victor Morgan's ("VSU Defendants'") Motion for Attorney's Fees (Dkt. #368); Defendant Laverne Gaskins' Motion for Attorney Fees (Dkt. #366); and Defendant Leah McMillan's Motion for Attorney's Fees and Sanctions (Dkt. #364).

## I.  INTRODUCTION

Defendants apparently suffer from the misimpression that they stand in the same position as the Plaintiff when it comes to entitlement to fees under the Civil Rights Act.  Their respective motions ignore the fact that "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law."  But the "policy considerations which support the award of fees to a prevailing plaintiff *are not present* in the case of a prevailing defendant."  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418-19 (1978) (emphasis added).  When a plaintiff succeeds in remedying a civil rights violation, he serves "'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'"  *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (citation omitted).  Accordingly, fees are normally awarded

1

to prevailing plaintiffs, but fees may be allowed to prevailing defendants only "under a different standard reflecting the 'quite different equitable considerations' at stake." *Id*. (quoting *Christiansburg*, 434 U.S. at 419).

Under this approach, the ***defendant*** is required to pay the prevailing plaintiff's full fee even where the plaintiff is not victorious on every claim. *Id*. at 2214. It is not enough that the plaintiff did not prevail on the unsuccessful claims. Rather, a prevailing defendant may qualify for fees only where there is a finding that plaintiff's action was "frivolous, unreasonable, or without foundation." *Id*. at 2213 (quoting *Christiansburg*, 434 U.S. at 421). The liberal allowance of fees for prevailing plaintiffs "was necessary to encourage vigorous private enforcement of the civil rights acts," and Congress explicitly recognized "that private enforcement would be substantially deterred if parties who had good faith claims under the civil rights statutes faced the prospect of having to pay their opponent's fees should they lose." *Keyes v. Lauga*, 635 F.2d 330, 334 (5th Cir. 1981).

In making the determination whether a claim is "meritless," it must be found to have been groundless and without foundation, and not simply that the plaintiff ultimately lost certain causes of action. Thus, the Supreme Court in *Christiansburg* advised that:

> it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success…. [T]he course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. … Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id*. at 421-22.   Moreover, where the unsuccessful claims arise "out of the same set of circumstances" as the successful claim, as they did in this case, there is no basis for awarding fees to the defendant.  *Keyes*, 635 F.2d at 334.

The Defendants in this case confuse their having eluded liability (thus far) with a conclusion that it was an abuse for them to have been included in the litigation in the first place. But none of the Defendants deny that they were deeply involved in the events that led to the Plaintiff's unlawful expulsion.   Even those few who expressed reservations about Zaccari's methods nevertheless breached their professional obligations and took actions that, ultimately, helped make the expulsion possible.   Whether or not all of Plaintiff's claims eventually are upheld, they are far from frivolous.  The same cannot be said of Defendant McMillan's motion to assess sanctions, which simply cannot be taken seriously.

## II.    BACKGROUND

Barnes filed a Complaint for declaratory and injunctive relief and damages on January 9, 2008, naming as defendants VSU, the BOR, University President Zaccari, University Counsel Gaskins, Vice President for Student Affairs Keppler, Dean of Students, Mast, Counseling Center Director Morgan, and VSU Counselor McMillan.   (Dkt. #1, Complaint).   The Complaint was based on Plaintiff's summary expulsion from VSU without any notice or hearing after he protested the environmental impact of a proposed campus parking deck.   Plaintiff also premised allegations in his Complaint on documents he obtained from the University pursuant to his request under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. The records, which Plaintiff received from VSU in December 2007, included, for example, Zaccari's June 21, 2007 letter to the BOR regarding Barnes's appeal of his expulsion, which outlined the series of events that Zaccari claimed formed the basis of the "collective" decision of campus administrators to expel Barnes.  (Trial Ex. P15).

All of the claims arise from the same operative facts.  Pursuant to 42 U.S.C. § 1983, the Complaint alleged the Defendants violated Barnes's First and Fourteenth Amendment rights.  It also alleged the Defendants subjected him to discrimination in violation of Title II of the ADA, 42 U.S.C. §§ 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Barnes further alleged that failure to provide the procedures and rights guaranteed by VSU and BOR policies and procedures was a breach of contract.

In a November 19, 2008 Order, the District Court denied Defendants' motions to dismiss Barnes's First and Fourteenth Amendment claims asserting individual liability under 42 U.S.C. § 1983, as well as his breach of contract, ADA, and Rehabilitation Act claims against the BOR and VSU.  (Dkt. #37).  The court denied Defendants' qualified immunity defense to Barnes's individual liability claims.  It otherwise dismissed Barnes's First and Fourteenth Amendment official capacity claims against the individual Defendants, dismissed those claims entirely against VSU and the BOR pursuant to the Eleventh Amendment, and dismissed claims against Victor Morgan.  At the close of discovery, Barnes voluntarily dismissed all remaining claims against Morgan.  (Dkt. #161).

Following extensive discovery, Barnes and all the Defendants filed motions for summary judgment.  On September 3, 2010, the Court granted summary judgment for Barnes on Count 4 of the Complaint, holding that Defendant Zaccari had violated the Plaintiff's right to procedural due process.  (Dkt. #244 at 44-46).  It found longstanding decisions clearly established that college students facing expulsion must be afforded pre-deprivation notice and a hearing under the Fourteenth Amendment.  (*Id.* at 44).  The Court also granted summary judgment for Barnes on Count 5, holding the BOR's failure to provide due process was a breach of contract.  (*Id.* at

46-49, 55-56).  It rejected as "disingenuous" Zaccari's qualified immunity defense based on the claim he was merely following legal advice.  (*Id.* at 45).

The court denied Barnes's First Amendment retaliation claim, narrowly construing the complaint as alleging only a conspiracy and finding that none of the other Defendants agreed with Zaccari to retaliate against Barnes.  (*Id*. at 40-42).  For the same reason, the Court held the other individual Defendants were not liable for denying procedural due process, and it held that Barnes suffered no substantive due process violation because a public education is not a fundamental right.  The Court also denied Barnes's ADA and Rehabilitation Act claims on the ground that Barnes was not "substantially limited" in his ability to learn.  (*Id*. at 53-54).  It also dismissed VSU as a named party in the action.

Defendants filed an interlocutory appeal on the issue of qualified immunity.  The Eleventh Circuit affirmed the Court's denial of qualified immunity "because Barnes had a clearly established constitutional right to notice and a hearing before being removed from VSU." *Barnes v. Zaccari*, 669 F.3d 1295, 1309 (11th Cir. 2012).  However, the Court found that "Georgia ha[d] not waived its Eleventh Amendment immunity for breach of contract actions." *Id.*

## III.    ARGUMENT

### A.    Plaintiff's Lawsuit Is Not Frivolous And Defendants Are Not Entitled to Attorney Fees or Costs

The Defendants fail to establish, as they must, that Plaintiff's action was frivolous, unreasonable, or without foundation.  *Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980); *Christiansburg*, 434 U.S. at 421.[1]  The Plaintiff indisputably prevailed in light of the Court's

---

[1]   The Eleventh Circuit has found that the same standard applies to cases brought under the Americans with Disabilities Act.  *Bruce v. City of Gainesville, Ga.*, 177 F.3d 949, 951 (11th Cir. 1999).

ruling that Defendant Zaccari deprived him of procedural due process, the Eleventh Circuit's affirmation of the Defendant's personal liability, and the jury's award of compensatory damages. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1292 (11th Cir. 2008) ("To be a prevailing party, it is not necessary for a plaintiff ultimately to prevail on each and every claim asserted or to receive all the relief requested; he needs to prevail on some of his claims.") (quoting *Doe v. Busbee*, 684 F.2d 1375, 1379 (11th Cir. 1982)) (internal quotation marks omitted). (*See* Dkt. #367 Pl. Mot. for Attorney's Fees & Costs).

The Defendants fall into the trap of assuming that the failure of some claims thus far means that they were frivolous. Clearly that is not the correct standard. In *Popham v. City of Kennesaw*, 820 F.2d 1570 (11th Cir. 1987), for example, the Eleventh Circuit held that unsuccessful claims were not brought for vexatious purpose even though the plaintiff, who was arrested at a candidates' forum, won only one claim against city police officers and failed to prevail on any federal civil rights claims against a city defendant. The Court reasoned that it was correct for the District Court to deny defendants' fees even though the plaintiff prevailed only on a single claim where the unsuccessful claims arose out of the same set of circumstances as the excessive force claim. *Id.* at 1583. *See also Keyes*, 635 F.2d at 334. The Court should focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful. *Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981); *see also Cordoba v. Dillard's, Inc.*, 419 F.3d 1169 (11th Cir. 2005).

The Eleventh Circuit has identified several factors to consider when determining whether a claim is frivolous, including "whether the plaintiff established a prima facie case," "whether the defendant offered to settle," and "whether the trial court dismissed the case prior to trial or

held a full-blown trial on the merits." *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985). Courts in this Circuit also consider the attention given to the claim because a claim is not frivolous when it is "meritorious enough to receive careful attention and review." *Busby v. City of Orlando*, 931 F.2d 764, 787 (11th Cir. 1991). Although the Defendants acknowledge these factors, they do not accurately apply them to this case. As explained below, these factors weigh in Plaintiff's favor and demonstrate that Defendants' motions for fees and costs should be denied.

### 1.   The Plaintiff Established a *Prima Facie* Case For His Claims

"[T]he presentation of a prima facie case in response to a motion for summary judgment means that a claim necessarily cannot … be considered frivolous." *Quintana v. Jenne*, 414 F.3d 1306, 1307 (11th Cir. 2005) (holding that the plaintiff's discrimination claim was not frivolous, despite her inability to rebut the defendant's legitimate reason for failing to promote her, because she had established a *prima facie* case). Thus, generally, where a plaintiff introduces sufficient evidence to support his claims, a finding of frivolity will not be upheld. *Sullivan*, 773 F.2d at 1189. Put another way, a finding of frivolity is unwarranted even when the defendant provides "overwhelming" evidence to defend against a claim. *Id*. at 1185.

Only where a plaintiff introduces ***no*** evidence in support of his claims will a finding of frivolity be appropriate. *Id*. at 1189. Accordingly, in this context, the district court "must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Id*. at 1189 (quoting *Jones*, 656 F.2d at 1145). As is evident by the parties' extensive discovery and summary judgment briefing, Plaintiff not only presented *prima facie* cases in support of all of his claims – he provided substantial evidence in support of his action.

### a.       Procedural Due Process Claims

The Defendants assert that Plaintiff's procedural due process claims against any Defendant but Zaccari were frivolous because the former President ultimately made the decision to expel Barnes.  The Defendants ignore the fact that Zaccari maintained at the time, and continued to claim at trial, that he expelled Barnes pursuant to the collective agreement of campus administrators.   Discovery confirmed the presence of all Defendants at numerous meetings with Zaccari – and in some cases without him – to discuss the prospect of expelling Barnes from VSU.  Moreover, whether Plaintiff was aware of the details of all the Defendants' involvement in the decision-making process to expel him from the University at the time he was deposed is a red herring and irrelevant to the determination of whether plaintiff "introduce[d] evidence sufficient to support [his] claims."  *Sullivan*, 773 F.2d at 1189.

Plaintiff based allegations in his Complaint on his experience being expelled from VSU and the documents he obtained pursuant to his FERPA request.   One key document was Zaccari's June 21, 2007 letter to the BOR outlining his reasons for expelling Barnes and asserting that the ultimate decision to do so was made as a "collective" decision with other campus administrators that he consulted with.[2]  Zaccari maintained this story at his deposition and throughout discovery and maintained even at trial that Barnes was expelled after his consultation with campus administrators including Keppler, Mast, Gaskins, and McMillan. (Dkt. #380, Zaccari Cross-Exam., Tr. Vol. 2, 234:3-6; Dkt. #381, Zaccari Cross-Exam., Tr. Vol. 3, 73:14-75:5).

---

[2] (Trial Ex. P15).  Zaccari maintained that "[t]he administrative unit . . . and I collectively decided that VSU take necessary steps to minimize as much as possible any security risks."  *Id.* at 4.  Zaccari acknowledged that he is "not an expert in the field of mental health," and that he "felt it necessary to defer to the experts and incorporated their input as a condition for Mr. Barnes readmission."  *Id.* at 7.  By Zaccari's account, "VSU's administrative staff [would] assess [Barnes's] request for continued enrollment."  *Id.*

Discovery confirmed the presence of all Defendants at numerous meetings with Zaccari to discuss expelling Barnes.  Some, like Keppler, offered suggestions, such as looking to see if Barnes could be withdrawn for academic reasons (although he later claimed that he disagreed with Zaccari's determination to expel Barnes).  (Dkt. #231-23, Barnes's Mot., Ex. 30, Contemporaneous notes of Major Ann Farmer).  Gaskins drafted the withdrawal notice and assisted Zaccari with his response to the Board of Regents.[3]  McMillan provided privileged information that Zaccari continues to rely on to this day.[4]  At trial Zaccari still claimed that he conferred widely about the expulsion and that he had a "consensus."  (*See* Dkt. #381, Zaccari Cross-Exam., Tr. Vol. 3, 74:3-5 ("it's a collective decision that that's the way we were to proceed").

The other Defendants claim that they did not "conspire" with Zaccari to expel Barnes, and that – individually – they did not personally "vote" for an expulsion.  But that was not the Plaintiff's argument, and it misstates the applicable standard.  Whether or not the other Defendants agreed with Zaccari in their hearts and minds, the Plaintiff provided evidence that each participated and supported Zaccari's actions in his or her own way.  (*See* Dkt. #179, Barnes's Mot. at 70-75).  As the Eleventh Circuit observed, "Zaccari announced his decision to 'administratively withdraw' Barnes at a May 3 meeting with staff and others.  He did not ask

---

[3] (Dkt. #179-1, Barnes's Mot., SUF¶¶ 59, 103).  In his post-trial motion on qualified immunity, Zaccari still maintains that Gaskins did not really disagree with his decision and that she confirmed that he faced an "unprecedented" situation.  (Dkt. #370 at 4-5).

[4] (See Dkt. #179-10, Barnes's Mot., Ex. 11, McMillan Dep. 17:21-22 (McMillan told Zaccari that Barnes was seeing a psychiatrist); *id*. 17:22-23 (McMillan described to Zaccari certain behaviors that concerned her); *id*. 17:24-18:6 (McMillan told Zaccari that she "had been in contact with Dr. Winders regarding a possible re-evaluation of Mr. Barnes and a medication change").  Zaccari's trial testimony included various claims that he based his decision on patient confidences that McMillan shared with him.  (Dkt. #380, Zaccari Direct Test., Tr. Vol. 2, 199:10-13, 221:12-23).

those present if he was making the right decision, and no one told him he was.  **Collectively, though, the group agreed that Barnes should be withdrawn** on May 7, a full four days later."[5] Whether or not the forgoing evidence of a collective decision to expel Barnes was sufficient to establish liability, the claims as to these Defendants are far from frivolous.  *Sullivan*, 773 F.2d at 1189.

The various Defendants' citations to Barnes's deposition testimony to support their assertions that he lacked evidence to support each and every claim are beside the point.[6]  At the time the deposition was taken, Barnes was only the second witness to be deposed and he did not yet have the deposition testimony of the Defendants' to aid his understanding of the bases for his claims.  And, in any event, counsel for a plaintiff is responsible for making legal arguments – not the individual parties.  Whether or not those claims ultimately succeeded, the relevant test is whether his arguments were supported with facts and legal argument in the summary judgment motion, not whether the client could recite the law at his deposition.

### b.    First Amendment Retaliation Claims

The Court's dismissal of the First Amendment retaliation claim based on its misreading of the Complaint as alleging only a "conspiracy" does not establish frivolousness.  Judge

---

[5] *Zaccari*, 669 F.3d at 1301 (emphasis added).  McMillian claims that she cannot be liable because she was not present at the May 3 meeting.  But she does not dispute that she met with Zaccari on various other occasions, that she understood his concerns to be about Barnes's protest activities, that she shared medical information with Zaccari without a release that he used to justify the expulsion.  The fact that McMillan may have had second thoughts and later tried to assist Barnes does not change the fact that she provided the information that Zaccari ultimately used to justify his decision.

[6] The common threads between the Defendants' briefs are not surprising.  As Defendants' counsel's exhibits in support of their fee motions make clear, counsel for Defendants have conferred regarding litigation strategy and shared briefing and discovery responsibilities throughout this litigation.  *See*, *infra*, at 22.  It remains an open question whether, if the Court were to grant the Defendants' motions, Plaintiff should have to pay the fees of all three law firms for the same work.

Pannell's decision to deny the retaliation claim was entirely premised on his erroneously constrained interpretation of the Complaint. Plaintiff may seek to appeal that aspect of his ruling, especially in light of the clear record established at trial. As Plaintiff showed in his motion for summary judgment, his speech was protected by the First Amendment, the Defendants' conduct adversely affected his speech, and there was a causal connection between the Defendants' actions and the adverse effect. (Dkt. #179-2, Barnes's Mot. at 28-36). *See Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005). All of the Defendants knew that Zaccari wanted to expel Barnes because of his speech, and each one took various steps to assist him in some way.[7] Some may have taken incremental steps to distance themselves, but none have attempted to deny their involvement in the events that led to the expulsion.

### c.    Discrimination Claims Under the ADA and Rehabilitation Act

The District Court concluded at summary judgment that Plaintiff failed to establish that he suffered from a substantial impairment sufficient to establish a discrimination claim under the ADA. Although the Court did not agree that Plaintiff's disability was "substantial" enough as a matter of law, Plaintiff did introduce significant evidence in support of his claim including interrogatory responses, medical records, and deposition testimony demonstrating that Barnes

---

[7] McMillan in particular expresses great indignation about the idea that she assisted Zaccari. But she was aware that Zaccari's concerns focused on Barnes's constitutionally-protected speech, and she agreed that the student's activities were somehow "inappropriate." (Dkt. #232-2, Barnes's Mot., Ex. 11, McMillan Dep. 58:4-23). Despite the fact that she had no release from Barnes, and that she had no concern whatsoever that there was any kind of threat, she shared with Zaccari that Barnes was her client, that she had suggested possible changes in medication (even though this suggestion was well beyond her area of competence), and she allowed Zaccari and others to monitor whether Barnes was keeping his appointments with her. (*Id*. at 17:21-18:6). She evidently later regretted having disclosed so much information after Barnes complained to Dr. Morgan. Accordingly, she later agreed to provide Zaccari with a letter confirming that Barnes was no danger, but only *after* he signed the necessary release. (Dkt. #231-40, Barnes's Mot., Ex. 47, May 7, 2007 Release; Dkt. #232-2, Barnes's Mot., Ex. 11, McMillan Dep. 126:18-23). However, she cannot deny what she did, or the fact that her information fueled Zaccari's decision.

sought and obtained special services at VSU, thus qualifying him as an individual with a disability under the ADA and Rehabilitation Act.   According to the Supreme Court, an impairment need not appear on a specific list of disorders to constitute a "disability."   *See Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998).   Nevertheless, Plaintiff provided specific evidence in his Motion for Summary Judgment.  (Dkt. #179-2, Barnes's Mot. at 62-63).

The Eleventh Circuit has noted that, even when a district court finds that a claim is "weak," an award of attorney fees and expenses to defendants would be inappropriate so long as the claim is "not entirely 'without foundation.'"   *Cordoba*, 419 F.3d at 1182 (employee's claim that her employer had constructive notice of her heart condition – even where she was at the time unaware of her disability – was not frivolous).   Accordingly, even though the court ultimately ruled on summary judgment that Plaintiff's disability did not "substantially limit" his ability to learn, Plaintiff's discrimination claim was founded on substantial evidence and met the *prima facie* standard.

The court's finding on this point was ironic in light of the VSU Defendants' repeated argument that Barnes was expelled from the University because he "ha[d] a mental illness." (Dkt. #177-2, VSU Defs.' Mot. at 29).  Although the VSU Defendants further claimed that there was an "independent basis" for expelling Barnes based on Zaccari's conclusion that Barnes's Facebook Collage was "'threatening' and that Barnes presented 'a clear and present danger' to the campus," (Dkt. #177-2, VSU Defs.' Mot. at 49), this reasoning – even if true – did not undermine Barnes' claims under the ADA and Rehabilitation Act.  Plaintiff was not required to prove that discrimination was the "sole" reason for his expulsion from VSU, only that it was a motivating factor, which the VSU Defendants conceded – no, urged – it was.  *See Baird ex rel.*

*Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999).  In any event, Plaintiff made a *prima facie* case in support of his discrimination claims against the Defendants, which was *per se* not frivolous.

### 2.      Defendants Offered to Settle Plaintiff's Claims

The second factor, a Defendant's offer to settle, also weighs in Plaintiff's favor.  In November and December 2007, before Plaintiff filed his action, the state attorney representing all Defendants in Plaintiff's administrative appeal of his expulsion offered to settle all claims for $5,000.00.  After Plaintiff filed his action, the Defendant served an Offer of Judgment on April 4, 2008, pursuant to Fed. R. Civ. P. 68, of $5,000.00 and the reimbursement of statutory costs and reasonable attorney's fees incurred prior to the receipt of the offer and as allowed under the law.[8]  Defendants' offer of settlement –inadequate as it was – demonstrates that the Defendants understood that the Plaintiff's claims were not without merit.[9]

### 3.      Plaintiff's Damages Claim Proceeded to Trial

The third factor, whether the case proceeded to trial, weighs in the Defendants' favor as to claims dismissed on summary judgment only.  In light of the fact that all other factors weigh in Plaintiff's favor, this factor does not establish that Plaintiff's claims were frivolous.

### 4.      Plaintiff's Case Was Sufficiently Meritorious to Receive Careful Attention From Both the District Court and the Eleventh Circuit

Another factor a district court must consider is the attention given to the claim.  In this regard, a claim cannot be considered frivolous when it is "meritorious enough to receive careful

---

[8] McMillan was separately represented after the Complaint was filed, and when the Rule 68 Offer of Judgment was submitted.

[9] The amount of the offer also is a factor in evaluating whether a settlement offer militates against a determination of frivolity.  *See Bonner v. Mobile Energy Servs. Co.*, 246 F.3d 1303, 1305 (11th Cir. 2001).  "In the absence of evidence of an offer of a substantial amount in settlement, this factor does not support either party."  *Quintana*, 414 F.3d at 1310.  Thus, this second factor does not support any Defendants' motion for fees and costs.

attention and review." *Busby*, 931 F.2d at 787.  Even where allegations are properly dismissed for failure to state a claim, they are not meritless or groundless where they receive such careful consideration.  *Hughes*, 449 U.S. at 15-16; *Cohen v. World Omni Fin. Corp.*, 457 F. App'x 822, 827 (11th Cir. 2012) ("One factor that went against a finding of frivolity was the attention given to the claim by the district court.").

This factor weighs heavily in Plaintiff's favor.  Both the District Court and the Eleventh Circuit have given this case careful attention in deciding issues presented to them.  Even on the claims it rejected, the District Court carefully considered the merits of Plaintiff's claims, issuing a 30-page opinion on the motion to dismiss and ruling, and a 57-page opinion on the cross-motions for summary judgment.

**B.     The Defendants' Make No Serious Arguments Supporting an Award of Attorney's Fees and Costs**

On balance, the *Sullivan* factors weigh strongly in Plaintiff's favor against a finding that his actions against the Defendants were frivolous.  In addition, Defendants' particular assertions about the facts do nothing to support their claims.

### 1.     VSU Defendants

The VSU Defendants argue that "large portions of discovery and depositions, particularly of Mast, Keppler, Zaccari, and Richard Lee, were devoted to questions or seeking information irrelevant to issues that actually survived summary judgment."  This assertion is beside the point and untrue.  Plaintiff's depositions of the VSU Defendants and the individuals they identified as potential witnesses not only helped develop the chronology of events leading to Barnes's expulsion and the constitutional violations along the way, but also later proved valuable at trial for impeachment and rebuttal testimony.  Defendants' observation that Barnes called Mast and Keppler as witnesses is irrelevant.  Those Defendants' testimony may have supported the

Plaintiff's prevailing procedural due process claim because they were participants in the events and could provide relevant testimony, but does not mean that the claims against them were baseless.

Barnes presented evidence at summary judgment demonstrating that Keppler and Mast participated in the meetings regarding Barnes, and not always as the passive administrators they later claimed to be.  For example, contemporaneous notes from the April 20, 2007 meeting show that Mast suggested that a "veiled threat" could be used as a justification for a disorderly conduct withdrawal.  (Dkt. #231-23, Barnes's Mot., Ex. 30, Contemporaneous notes of Major Ann Farmer).  Likewise, Keppler suggested that another way to remove Barnes would be to "go the route of the GPA."  (*Id.* at 14).  (*See also* Dkt. #231-20, Barnes's Mot., Ex. 27, Farmer Dep. 62:4-10).  There was thus evidence to support Plaintiff's claims that Keppler and Mast actively supported Zaccari's actions to remove Barnes even though they knew he was no threat, and that doing so would be inconsistent with VSU policies and due process protections for which they were responsible.  But even if they quietly disagreed (as they ultimately claimed), their silence was taken by Zaccari as consent, (Dkt. #190, Zaccari Dep. 162:12-166:20), and he specifically cited their advice as supporting his actions.  (Trial Ex. P15).

The VSU Defendants' assertions that fees and costs should be awarded due to Plaintiff's inclusion of Victor Morgan as a defendant ignore the fact that at the conclusion of discovery Plaintiff voluntarily dismissed Morgan from the case.  (Dkt. #161).  Such a decision could only be made, however, after the completion of discovery confirmed that Morgan did not do anything to support the expulsion decision in the meetings Zaccari convened (and, unlike McMillan, he provided no confidential counseling information).  Instead, discovery revealed that Morgan directly challenged Zaccari's story about there being a threat, and, by standing up to the

15

President, Morgan blocked Zaccari's ability to use the mental health withdrawal policy to remove Barnes.[10]   Realizing that Zaccari was looking for a way to remove Barnes without any evidence of a threat, Dr. Morgan said to Zaccari, "Dr. Zaccari, we cannot remove Hayden from school based on a mental health withdrawal.  In my opinion, he's complying with everything we're asking him to do."  (Dkt. #231-31, Barnes's Mot., Ex. 38, Morgan Dep. 22:23-23:1).  By contrast, the remaining Defendants were well aware that Barnes was being stripped of his legal rights as it was happening, and each could have taken steps within their respective spheres of responsibility to prevent it – but they did not.

The VSU Defendants also argue that Barnes's claims against VSU were all frivolous because the University was an improper party to the suit.  Although some cases hold that the BOR must be sued in place of individual schools in the University System of Georgia, *see, e.g., McCafferty v. Medical Coll. of Ga.*, 249 Ga. 62, 64-65 (1982), VSU did not raise this defense until the summary judgment stage.  Thus, in this case, Plaintiff reasonably argued that both VSU and the BOR consented to VSU's party status by failing to raise this defense in their Pre-Answer Motion to Dismiss.  *See* Fed. R. Civ. P. 12(b)(2) ("A Motion asserting any of these defenses [including personal jurisdiction] must be made before pleading if a responsive pleading is allowed.").  Moreover, VSU's failure to actively contest personal jurisdiction until over a year after filing its answer demonstrated an "intent to submit to [this] Court's jurisdiction" and therefore, waived the defense.  *See Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993).  Moreover, counsel for the VSU Defendants does not point to any added expense or

---

[10] (Dkt. #161, Pl's Mot. to Dismiss Def. Victor Morgan).  Dr. Morgan explained in detail why Barnes's advocacy did not represent a threat, and told Zaccari that the use of the word "memorial" on Barnes's Facebook collage was nothing more than "Hayden … saying that you're going to go down in history…. This is going to be a building with your name on it. (Dkt. #231-31, Barnes's Mot., Ex. 38, Deposition of Dr. Victor Morgan, 22:10-24:20).

fees that it incurred as a result of VSU being named a defendant in this action – nor can it. Counsel for the VSU Defendants did not have to defend any deposition merely because VSU was a named party, nor did it draft any brief solely on the issue of VSU's party status.

### 2.    Gaskins

Notwithstanding her knowledge as Zaccari's legal advisor that the decision to expel Plaintiff violated VSU policies, the ADA and Barnes's rights under the First and Fourteenth Amendments, Gaskins drafted the withdrawal notice and coordinated the decision with other staff members.  Barnes demonstrated at summary judgment that, beginning with the meeting on April 20, 2007, Gaskins was involved in deliberations over his expulsion.  (Dkt. #179-1, Barnes's Mot., SUF Chart ¶ 59).  When Zaccari found that he lacked the support of the VSU Counseling Center for a mental health withdrawal, he enlisted Gaskins to find out what the process would be for the President to withdraw a student unilaterally, and she continued to participate in conference calls and meetings about the withdrawal up until its implementation. (*Id*., SUF Chart ¶ 103).  Gaskins advised Zaccari of the legal problems of unilaterally expelling a student, but he fashioned a new procedure, drawing form the conference calls and the options Gaskins presented.  (*See, e.g.*, Dkt. #234-3, SUF Chart ¶¶ 104, 107, 108, 110).  Gaskins was fully aware that Zaccari's concoction violated Barnes's rights, yet she dutifully helped him implement it.  After the expulsion was issued, Gaskins assisted Zaccari in defending his actions to the Board of Regents.

Barnes's demonstration that Gaskins knowingly participated in constitutional and statutory violations based on extensive evidence was not frivolous.  Although Judge Pannell disagreed that there was an adequate causal connection between Gaskins's actions and Zaccari's decision to expel Barnes, Plaintiff presented sufficient evidence to support his claim.

### 3.     McMillan

McMillan knowingly breached her duty to preserve confidentiality regarding her relationship with Barnes with full awareness that Zaccari planned to use the information to discipline her client for his protest activities.  Although McMillan ultimately told Zaccari that she did not believe Barnes was a threat to himself or others, she first provided him with confidential information regarding Barnes's diagnoses, treatment, medications, mental health history, and personal physician to Zaccari and his staff in furtherance of Zaccari's assertion that Barnes's protest activities were somehow disturbing and needed to be quelled.  McMillan knowingly disclosed confidential information that she was aware Zaccari was seeking to use against Barnes because of his advocacy concerning the parking deck.  Although McMillan has argued that she disclosed information to help and protect Plaintiff, the information she disclosed went far beyond relaying Plaintiff's mental health status.  She provided confidential information about Barnes's therapeutic and psychiatric treatment.[11]  Armed with McMillan's information, Zaccari even briefly interrupted the April 26 meeting when he thought Barnes had missed his appointment with his counselor.  Plaintiff presented ample evidence at summary judgment in support of this theory.

McMillan appears to argue that so long as she was not motivated to deny Plaintiff procedural due process, retaliate against his speech, or discriminate against him based on his disability any claim Plaintiff asserted against her was frivolous.  This is untrue.  As the Eleventh Circuit made clear in *EEOC v. Reichhold Chemicals, Inc.*, a "[p]laintiff should not be assessed

---

[11] (See Dkt. #179-10, Barnes's Mot., Ex. 11, McMillan Dep. 17:21-22 (McMillan told Zaccari that Barnes was seeing a psychiatrist); *id.* 17:22-23 (McMillan described to Zaccari certain behaviors that concerned her); *id.* 17:24-18:6 (McMillan told Zaccari that she "had been in contact with Dr. Winders regarding a possible re-evaluation of Mr. Barnes and a medication change").

fees … because a defendant can offer convincing non-discriminatory reasons for its actions." 988 F.2d 1564, 1571-72 (11th Cir. 1993).  In that case, the court held that a district court abused its discretion when it awarded a defendant attorney's fees for defending against a Title VII claim after the plaintiff had established a *prima facie* case.  The Court's reasoning in *Reichhold* is equally applicable here:

> The plaintiff relied on … circumstantial evidence to establish a prima facie case.  Admittedly, defendant's counsel presented convincing proof of non-discriminatory reasons for each [employment action] and defeated [the plaintiff's] claims on the merits; the cumulative effect of these employment actions and their timing, however, was sufficient to meet the plaintiff's initial burden.  Accordingly, the retaliation claims were not frivolous and the district court abused its discretion in awarding fees ….

*Id*.  There is no basis for a finding of frivolity in this case.  *Quintana*, 414 F.3d at 1311.

### C.     Defendant's Attorney Fee Claims Are Unreasonable

Not only are Defendants' claims for attorney's fees erroneous as a matter of law, their submissions in support of their claims are woefully deficient.  "The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to an award.'"  *Fox*, 131 S. Ct. at 2216 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  The party seeking the fees "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."  Obviously, excessive, redundant, or otherwise unnecessary hours should not be included in the calculation.  *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).  In this regard, ***none*** of the Defendants attempt to separate the hours they devoted solely to non-frivolous claims.  *Fox*. 131 S. Ct. at 2215.

Here, the VSU Defendants seek reimbursement for a total of 1,587.5 hours spent litigating the case.  This consists of 1,418.6 hours of attorney time and 168.9 hours of paralegal

time.  Counsel for the VSU Defendants' invoice suffers from a number of serious deficiencies including opaque, non-detailed billing descriptions on one hand, and, on the other, block billing. Such sloppy billing practices make it "difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in [the] litigation."[12] Even if such charges could be shown to be legitimate, the amount must be reduced across the board.  *See, e.g.*, *Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 2011 WL 1883009 (S.D. Ala. May 17, 2011), *aff'd*, 476 F. App'x 198 (11th Cir. 2012); *2002 Irrevocable Trust for Richard C. Hvizdak v. Shenzhen Dev. Bank Co.*, 2011 WL 4112776 (M.D. Fla. Sept. 15, 2011).

---

[12] *ACLU of Ga.*, 168 F.3d at 429.  For example, on September 1, 2009, counsel Holly Hance billed 11.4 hours as follows:

> Review and revise draft of brief in Opposition to Plaintiff's Motion to Exclude Testimony of Dr. Norman; Revisions and exchanges to Opposition to Motion to Exclude Testimony of Dr. Norman; Conference call with Matthew LaVallee, re: Plaintiff's request for Consent Motion to Extend Summary Judgment deadline; Continue to complete and file Motion in Opposition to Motion to Exclude Dr. Norman

On June 15, 2009, counsel David Will billed 8.2 hours for the following:

> Email correspondence with Bob Corn-Revere (multiple); Email correspondence with David Smith (multiple); Telephone conferences with David Smith (2 calls); Email correspondence with Chris Fedeli; Email correspondence with Kurt Keppler; Email correspondence with Matthew LaVallee; Finalize responses for Mast, Keppler and Zaccari, Telephone conference with Kimberly Ballard Washington; Extended telephone conference with Betsy Neely; email Bob Corn-Revere

Similar blocked entries are found throughout counsel's time entries. For a small sample of the block billing found throughout the invoice, see the entries for April 17, 2009, May 28, 2009, June 4, 2009, June 10, 2009, June 11, 2009, June 12, 2009, June 16, 2009, June 18, 2009, June 22, 2009, July 29, 2009, August 7, 2009, August 21, 2009, September 17, 2009, December 29, 2009, January 10, 2010, and December 7, 2010.

Even more problematic is the fact that counsel for the VSU Defendants has not exercised *any* billing judgment at all.  (Dkt. #368-1).  Instead, the invoice appears to include *all* time expended in this proceeding since the date counsel was hired, with no time eliminated to reflect its unsuccessful defense of Plaintiff's procedural due process and breach of contract claims or the VSU Defendants' hiring of an expert witness, Dr. Matthew Norman, whom they ultimately declined to present as a witness at trial.[13]  None of this is compensable.

The Supreme Court most recently made it clear that, to whatever extent a defendant may qualify for fees, the amount is limited solely to time expended just on the frivolous claims.  *Fox*, 131 S. Ct. at 2215.  Moreover, to the extent the defendant would have incurred the legal expenses anyway in defending against non-frivolous claims, "*then a court has no basis for transferring the expense to the plaintiff*."  *Id*. (emphasis added).  In this case, where the different claims all arose from the same operative facts, and all the same discovery would have been conducted, "the defendant would have incurred the expense in any event" and thus "has suffered no incremental harm from the frivolous claim."  *Id*.

Finally, counsel for the VSU defendants tried inappropriately to claim reimbursement for non-legal work, including filing documents and organizing files.   "When reviewing an application for attorney's fees, the court may appropriately consider whether the work performed was legal work in the strict sense or was merely clerical work that happened to be performed by a lawyer."  *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000) (citation and internal quotation marks omitted).  The Court should eliminate entirely any claims that include those hours.  Similar clerical work by paralegals should be deleted.  *B&F Sys., Inc.*

---

[13] The Court should also exclude all expenses related to the VSU Defendants' retention of Dr. Norman as a witness, including but not limited to his $2,835 expert witness fee and $805 hearing preparation fee.  Moreover, any attorney time spent preparing for and deposing Dr. Norman should likewise be excluded.

*v. LeBlanc*, 2012 WL 2529191, at *10 (M.D. Ga. June 29, 2012) (citing *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988).

Counsel for Gaskins seeks reimbursement for a total of 472.2 hours spent litigating this case.  (Dkt. #366-3).  Counsel's invoice reveals that co-counsel for all defendants in this case engaged in substantial collaboration and shared responsibilities for defense of Plaintiff's claims.[14]  Defendants claimed to need separate counsel due to conflicts of interest in presenting individual defenses, but the attorney time records reveal that this was certainly not consistently the case.  The Court should eliminate such duplicate time entries for defense counsel as Plaintiff should not be required to pay three law firms to provide the same services to a common group of defendants on the same claims.

Finally, counsel for McMillan seeks reimbursement for a total of 1,053 hours spent litigating this case.  (Dkt. #364-2).  Of those hours, 1,020.9 hours are attorney time and 32.1 hours are paralegal time.  Although some of counsel's entries are redacted, there is no indication that such time was redacted from the total hours expended.  And, as discussed *supra*, any time spent sharing the work of other Defendants' counsel should be eliminated.  Moreover, some of the paralegal time billed for McMillan should be reduced because it is clerical in nature. *B&F Sys.*, 2012 WL 2529191, at *10.

---

[14] Examples of coordination efforts between counsel for co-Defendants can be found in David Will's entries on April 17, 2009, April 23, 2009, April 29, 2009, May 21, 2009, June 4, 2009, June 8, 2009, June 9, 2009, June 16, 2009, June 24, 2009, June 25, 2009, June 29, 2009, July 3, 2009, July 6, 2009, July 12, 2009, July 15, 2009, July 17, 2009, July 21, 2009, July 24, 2009, August 1, 2009, August 5, 2009, August 6, 2009, August 10, 2009, August 11, 2009, August 13, 2009, August 19, 2009, August 24, 2009, September 1, 2009, November 4, 2009, December 4, 2009, April 23, 2010, September 7, 2010, September 17, 2010, and October 21, 2010.

### D.    McMillan's Claim For Sanctions is Transparently Meritless

When Zaccari looked for ways to expel Barnes for his speech about the parking decks, Defendant McMillan was all too willing to share information without a release from Barnes, including diagnoses, medication, contact with his doctor at home, and even when – and whether – Barnes was supposed to show up for appointments.  None of this is in dispute.  To her credit, McMillan would not go along with Zaccari's claims that there was a threat to safety, although she did share with him that she had "concerns," and she wrote a letter to satisfy one of Zaccari's two conditions for readmission.  The Plaintiff believes that McMillan's involvement in these events, and, in particular, the information she shared without a release, materially supported Zaccari's decision, and for that reason McMillan was included among the Defendants.[15]  Counsel for McMillan, on the other hand, apparently believes that disagreement as to whether these facts set forth a possible basis for liability is sanctionable under 28 U.S.C. § 1927.  This is not a serious argument.

Although counsel McMillan claims that Plaintiff engaged in "unreasonable and vexatious" conduct that "multiplies the proceedings," he fails to explain how disagreement over this theory of liability qualifies for sanctions, apart from his strawman reinterpretation of the arguments.[16]  What counsel fails to mention is that McMillan was offered the possibility of having claims against her dismissed if she would provide a complete and ***honest*** accounting for

---

[15] Victor Morgan, a former Defendant, also met with Zaccari on behalf of the Counseling Center.  Unlike McMillan, however, he never shared any confidential information or "concerns" about Barnes.  Instead, he consistently confirmed that the Counseling Center would not support a mental health withdrawal.  Accordingly, Barnes dropped all counts involving Morgan at the close of discovery.

[16] Counsel for McMillan maintains that the fact she did not attend a May 3 meeting of "vote" to expel Barnes is somehow dispositive, but does not deny her deep involvement in the events that led to the expulsion.  Quite simply, Zaccari could not have achieved his objective without the information McMillan shared.

the record of all the information she disclosed about Barnes to Zaccari.[17]  For whatever reason, the offer was declined on McMillan's behalf.  But regardless of the reason, there is no basis whatsoever for asserting that the Plaintiff prolonged or multiplied the proceedings.

Finally, McMillan makes no cogent argument for how the course of this litigation falls within the prohibition of 28 U.S.C. § 1927, and cites no cases in which sanctions were imposed.[18]  The Eleventh Circuit has long recognized that, because the provisions of § 1927 are penal in nature, they must be strictly construed.  *Monk v. Roadway Express, Inc.*, 599 F.2d 1378, 1382 (5th Cir. 1979), *aff'd sub nom*, *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980).  There are three requirements for an award of sanctions: (1) the attorney must engage in "unreasonable and vexatious" conduct; (2) the "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings"; and (3) the dollar amount of the sanction must bear a financial nexus to the excess proceedings.  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (quoting 28 U.S.C. § 1927).

An attorney multiplies proceedings "unreasonably and vexatiously" within the meaning of the statute only when the attorney's conduct is so egregious that it is "tantamount to bad faith."  *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991); *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003); *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993) (an attorney's conduct was "tantamount to bad faith" when he "either deliberately or

---

[17] This offer was made both before depositions commenced, and was conveyed again at the first deposition conducted in this proceeding in June 2009.

[18] Both of the cases McMillan cites denied sanctions.  In *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230 (11th Cir. 2007), the Court held that a district court's decision to hold attorneys jointly liable for fees and costs incurred in reopening deposition was an abuse of discretion.  In *Peterson v. BMI Refractories*, 124 F.3d 1386 (11th Cir. 1997), the Court held that a sanctions award was not warranted where plaintiffs' counsel did not act in a manner that multiplied proceedings.

carelessly" covered up evidence).  Defense counsel's strongly held belief that plaintiff's claims

are meritless simply does not meet this standard.  *Salkil v. Mount Sterling Twp. Police Dept.*,

458 F.3d 520, 529-530 (6th Cir. 2006); *Boler v. Space Gateway Support Co, LLC*, 290 F. Supp.

2d 1272, 1285 (M.D. Fla. 2003) ("bad faith" under § 1927 "is higher than the standard for

frivolousness").  McMillan utterly fails to demonstrate that Plaintiff's counsel acted in bad faith

by bringing his well-founded claims against her.  McMillan's sanctions request should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Barnes respectfully requests that the Court deny the

Defendants' motions for attorney's fees and costs and for sanctions.

Dated:  March 12, 2013

Respectfully submitted,

_____/s/Robert Corn-Revere_____
Robert Corn-Revere
Lisa Beth Zycherman
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC  20006-3401
bobcornrevere@dwt.com
lisazycherman@dwt.com
(202) 973-4200

Cary Wiggins
Georgia Bar #757657
Wiggins Law Group
260 Peachtree Street, N.W.
Suite 401
Atlanta, GA  30303
cary@cywlaw.com
(404) 659-2880

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2013, I electronically filed the foregoing Consolidated

Opposition to Defendants' Motions for Attorneys' Fees, Costs, and Sanctions with the Clerk of

Court using the CM/ECF system which will send notification of such filing to all counsel of

record.

_____/s/Robert Corn-Revere_____

Robert Corn-Revere
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC  20006-3401
bobcornrevere@dwt.com