IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| THOMAS HAYDEN BARNES,<br><br>Plaintiff,<br><br>v.<br><br>RONALD ZACCARI, et al.,<br><br>Defendants. | CASE NO.<br>7:12-CV-000 89-HL |

**LEAH MCMILLAN'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEY'S FEES AND SANCTIONS**

COMES NOW LEAH MCMILLAN, who files this Reply in support of her Motion for Attorney's Fees and Sanctions as follows:

## I. INTRODUCTION

Plaintiff's Response (Doc. 385) to Mrs. McMillan's Motion for Attorney's Fees and Sanctions is principally a regurgitation of the very arguments the District Court already found to be lacking any credibility or evidentiary support. Moreover, in keeping with his previous pleadings, Plaintiff finds new and creative ways to falsely besmirch Mrs. McMillan in hopes that the Court will ignore the fact that he filed a completely frivolous and vindictive lawsuit against her.

Plaintiff's attempts at obfuscation aside, Mrs. McMillan will now refocus the Court's attention back to why her motion for attorney's fees and sanctions should be granted.

### A. <u>Plaintiff Failed To Establish A Prima Facie Case Against Mrs. McMillan</u>.

Try as he might, Plaintiff cannot run from the District Court's summary judgment order, which established he failed to set forth a prima facie case against Mrs. McMillan. In granting summary judgment to Mrs. McMillan from Plaintiff's First Amendment Retaliation claim, the Court held:

> **<u>All of the evidence</u>** produced in this case shows that there was a steadfast disagreement between McMillan and Zaccari regarding the issue of Barnes withdrawal from VSU. McMillan consistently and repetitively voiced her objection to Zaccari's opinion that Barnes or the Facebook collage was a threat. She argued that Barnes should be permitted to remain a student, and then lobbied for Barnes' re-admission after Zaccari served notice of the withdrawal.

(Doc. 244, pp. 26-27). (Emphasis added).

Similarly, in granting summary judgment to Mrs. McMillan from Plaintiff's due process claim, the Court held that it was:

> [N]ot persuaded by the various phrases from cases cited by Barnes in support of his argument that McMillan is liable because those quotations **<u>are taken out of context</u>** and fail to sufficiently address how McMillan, as counselor at a state university, caused Barnes to be withdrawn. Because the undisputed facts show that Zaccari made the withdrawal decision on his own, the link between McMillan's actions in April-May 2007 and Barnes's alleged harm regarding his substantive and procedural due process rights is too remote to fairly permit the imposition of civil liability against McMillan.

(Doc. 244, p. 33). (Emphasis added).

Plaintiff's Response completely ignores these findings. Instead, Plaintiff tries to argue that because he presented evidence to support his claims **against Defendant Zaccari**, he somehow established a prima facie case against Mrs. McMillan. (Doc. 385, p. 7). This has been a repetitive ploy by Plaintiff—avoid having to provide any evidence or legal authority to support the claims filed against Mrs. McMillan by focusing on the alleged wrongdoing of Defendant Zaccari. As this Court is well aware, in Section 1983 cases, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937 (2009).

Plaintiff also recast a few more standby arguments in his Reply. For instance, Plaintiff once again tries to suggest that Mrs. McMillan "**knowingly** disclosed confidential information **that she was aware** Zaccari was seeking to use against Barnes because of his advocacy concerning the parking deck." (Doc. 385, p. 18). (Emphasis added). Of course, Plaintiff could not produce any evidence to support his theory that Mrs. McMillan was a mind reader regarding Defendant Zaccari's motives. Indeed, there was absolutely no record evidence showing that; (1) Defendant Zaccari ever told Mrs. McMillan that he was retaliating against Plaintiff on account of his opposition to the parking deck; (2) that Mrs. McMillan "was aware" of any such intentions; (3) or that the parking deck ever played a role in the

reason for Mrs. McMillan's having described to President Zaccari Plaintiff's current mental health status.  Moreover, Plaintiff apparently forgets that **he himself** relied on Mrs. McMillan's testimony that she "did not know what President Zaccari was really feeling."  (Doc. 223, ¶ 14, p. 16).  As Plaintiff stated in his deposition, "I don't have any specific evidence for [Mrs. McMillan] releasing information prior to my administrative withdrawal in retaliation for my beliefs regarding the parking garage, to my knowledge."  (Doc. 167, p. 5).

Additionally, Plaintiff argues once more that each defendant "participated and supported Zaccari's actions in his or her own way" and that the information Mrs. McMillan provided somehow "fueled" Defendant Zaccari's decision to withdraw Plaintiff.   (Doc. 385, p. 9; p. 11, n. 7).  It is simply astonishing that Plaintiff can continue to argue that Mrs. McMillan's providing **helpful** information—that he was no threat and should be allowed to stay enrolled at VSU—is somehow tantamount to her "participating" in his withdrawal or that it provided "fuel" to Defendant Zaccari's decision to withdraw him.  The District Court already deemed these arguments by Plaintiff meritless.  (Doc. 244, pp. 26-27, 33).

Plaintiff himself quotes, "[o]nly where a plaintiff introduces *no* evidence in support of his claims will a finding of frivolity be appropriate."  (Doc. 385, p. 7, citing Sullivan v. School Bd. Of Pinellas County, 773 F.2d 1182, 1185 (11th Cir.

1985)).  (Emphasis in original).  That is exactly what has taken place as it relates to Plaintiff's case against Mrs. McMillan.

### B. **Mrs. McMillan Never Offered To Settle.**

Mrs. McMillan never offered to settle this case.  The Attorney General's Office offered to settle Plaintiff claims for $5,000 **before** this lawsuit was filed and before Mrs. McMillan was represented by undersigned counsel.  Additionally, the Rule 68 Offer of Judgment extended to Plaintiff after suit was filed **was not submitted on behalf of Mrs. McMillan.**  (Doc. 385, p. 13, n. 8).

### C. **The Trial Court Dismissed Plaintiff's Case Against Mrs. McMillan Prior To Trial.**

The District Court dismissed Plaintiff's case against Mrs. McMillan prior to trial.  (Doc. 244, p. 57).  It is of no moment that Plaintiff's case against Defendant Zaccari advanced to trial.  (Doc. 385, p. 13).

### D. **The Fee Amount Requested By Mrs. McMillan Is Proper.**

Plaintiff objects to the fee amount requested by Mrs. McMillan by stating that "[a]lthough some of counsel's entries are redacted, there is no indication that such time was redacted from the total hours spent." (Doc. 385, p. 22).  To the contrary, the billing records and affidavit of undersigned counsel plainly show that the redacted time was not included in Mrs. McMillan's fee request.  As undersigned's bills and affidavit reveal, the attorney hours add up to 1020.90 hours, the paralegal hours equal 32.1 hours, and the corresponding rates are $125 for attorneys and $50

for paralegals.  These hours multiplied by their corresponding rates, and added together, equal $129, 217.50.  (Doc. 364-3; Doc. 364-2, ¶¶ 6-8).

Secondly, Plaintiff suggests that counsel for Mrs. McMillan shared work with co-defense counsel and such time should not be recoverable.  (Doc. 385, p. 22). Plaintiff however fails to point out which alleged "shared work" amongst co-defense counsel he finds objectionable and fails to cite to any legal authority supporting his position.  Mrs. McMillan's billing records do show that meetings, telephone calls, and correspondence were conducted amongst co-counsel during the course of litigation, but such activity can hardly be deemed work from which fees should not be awarded.  (Doc. 364-3).

Lastly, Plaintiff objects to Mrs. McMillan's including paralegal time amongst her request for fees because "some" of it was "clerical in nature."  (Doc. 385, p. 22). As with his "shared work" objection, one is left to guess exactly what paralegal time Plaintiff is objecting to as clerical.  Moreover, it should be noted that Plaintiff's request for attorney fees included "payment for services rendered by six attorneys **and two legal assistants**."  (Doc. 367-5, ¶ 5).  (Emphasis added).  Plaintiff seeks fees for work performed by paralegal Elizabeth Rivard at $155 and paralegal Marni Shapiro at $225.  (Id., ¶ 26).  Undersigned's attorney rate was $125.  (Doc. 364-2, ¶ 5).

### E. Sanctions Pursuant To 28 U.S.C. § 1927 Are Warranted.

Plaintiff's Response states that "McMillan utterly fails to demonstrate that Plaintiff's counsel acted in bad faith by bringing his well-founded claims against her." (Doc. 385, p. 25). How counsel can continue to cling to the notion that Plaintiff's claims against Mrs. McMillan were somehow "well-founded" is remarkable. Counsel refuses to let go of the "she talked to much" line of reasoning. (Doc. 385, p. 23). Plaintiff never had a legally cognizable breach of confidentiality claim against Mrs. McMillan, which is why counsel did not include such a cause of action in the Complaint.

Whether Plaintiff thinks Mrs. McMillan said too much to Defendant Zacarri, or that she should have received "permission" from him before doing so, such opinions are immaterial to the First Amendment retaliation and due process claims **actually filed** against Mrs. McMillan. What is relevant to the instant inquiry is that the evidence has shown Plaintiff and his counsel knew full well when they filed this case, and during its litigation, that Mrs. McMillan did not retaliate against Plaintiff for exercising his free speech and that Defendant Zaccari effectuated Plaintiff's withdrawal over McMillan's objections. If such conduct does not equate to bad faith, it's hard to fathom what would.

Furthermore, its astonishing counsel would even bring up his previous overture to potentially drop Mrs. McMillan from the lawsuit. (Doc. 385, p. 23).

During discovery counsel stated that he would "consider" dropping Mrs. McMillan from the lawsuit if she would provide him an affidavit **to his liking**. This can hardly be construed as an act of good faith. Instead, it represents one in a long line of bullying tactics utilized by counsel against Mrs. McMillan.

Lastly, undersigned points out that while summary judgment motions were pending, one of Plaintiff's lawyers went so far as to request that Mrs. McMillan personally go into debt and settle this frivolous case with Plaintiff so she could "get this matter behind her."

Indeed, Plaintiff's counsel has acted in bad faith and has unreasonably and vexatiously multiplied these proceedings by maintaining a knowingly frivolous lawsuit against Mrs. McMillan. As a result, sanctions under 28 U.S.C. § 1927 against Plaintiff's counsel are warranted.

## II. CONCLUSION

For five years and counting, Plaintiff and his legion of attorneys have stuck by the story that it was somehow appropriate to drag Mrs. McMillan through this litigation because she did not obtain a waiver of confidentiality before discussing Plaintiff's current mental health status with Defendant Zaccari back on April 24, 2007. It apparently was not good enough for Plaintiff and his lawyers that Mrs. McMillan consistently and repeatedly voiced her objection to Defendant Zaccari's opinion that Plaintiff or his Facebook collage was a threat. Nor did it matter that

Mrs. McMillan hand delivered a letter to Defendant Zaccari that directly opposed Plaintiff's withdrawal, that she summarized her therapy notes for his lawyers, or that her efforts helped Plaintiff obtain a reversal of his administrative withdrawal by the Board of Regents.

Plaintiff could have refrained from suing Mrs. McMillan and simply obtained her testimony via deposition. However, doing so would not have fit into Plaintiff's litigation strategy. Instead, Plaintiff and his counsel believed that including an innocent woman as a defendant in a federal lawsuit was a better strategy to secure information that was helpful to their case. What's worse, even after obtaining the testimony they needed from McMillan—that she advised Defendant Zaccari that Plaintiff was no threat and should not be withdrawn—Plaintiff refused to drop Mrs. McMillan from the case. For Plaintiff and his counsel, it was simply a win at any cost mindset—never mind what the evidence may bear.

Plaintiff's quest to prove he was wrongfully withdrawn from VSU by Defendant Zaccari did not give him a license to wreck as much havoc on as many people as he saw fit—especially upon a woman who he knew did not retaliate against him and acted as an advocate on his behalf. As a result, Mrs. McMillan respectfully urges this Court to grant her Motion for Attorney's Fees and Sanctions.

Respectfully submitted this 25th day of March, 2013.

        **s/ Matthew R. LaVallee, Esq.**
        Georgia Bar No. 438196
        Attorney for Leah McMillan
        **DALEY, KOSTER & LAVALLEE, LLC**
        Overlook I
        2849 Paces Ferry Road, Suite 205
        Atlanta, GA  30339
        Telephone:  (678) 213-2401
        E-Mail: mlavallee@dkllaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| THOMAS HAYDEN BARNES, | |
| Plaintiff, | |
| v. | CASE NO. 7:12-CV-00089-HL |
| RONALD ZACCARI, et al., | |
| Defendants. | |

This is to certify that on March 25, 2013, I served a copy of **LEAH MCMILLAN'S REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND SANCTIONS,** to all counsel and parties of record listed below and with the Clerk of Court via electronic notice using the CM/ECF system:

**Attorneys for Plaintiff**
Robert Corn-Revere, Esq.
Lisa B. Zycherman, Esq.
Davis Wright Tremaine, LLP
1919 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006-3401
bobcornrevere@dwt.com
lisazycherman@dwt.com

Cary Stephen Wiggins, Esq.
Wiggins Law Group
260 Peachtree St. NW, Suite 401
Atlanta, GA 30303
cary@wigginslawgroup.com

Darl Hilton Champion, Esq.
Warshauer Law Group, PC
3350 Riverwood Pkwy Ste 2000
Atlanta GA 30339
dhc@warlawgroup.com

**Attorneys for Valdosta State University Defendants**
David C. Will, Esq.
Holly Hance, Esq.
Royal-Will Law Firms
4799 Sugarloaf Parkway
Building J
Lawrenceville, GA 30044
dwill@royallaw.net
hhance@royallaw.net

**Attorneys for Defendant Laverne Gaskins**
David R. Smith, Esq.
Brannen Searcy & Smith
PO Box 8002
22 E 34th Street
Savannah, GA 31412-8002
DSmith@brannenlaw.com

*s/* **Matthew R. LaVallee**
Georgia Bar No. 438196
Attorney for Leah McMillan

**DALEY, KOSTER & LAVALLEE, LLC**
2849 Paces Ferry Road, Suite 205
Atlanta, Georgia 30339
(678)-213-2401; (678)-213-2406 (fax)
mlavallee@dkllaw.com